**MIDWEST ASBESTOS ABATEMENT CORPORATION, Respondent,**

v.

**Sonya Rae BROOKS, et al., Appellants.**

**No. ED 80158.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 29, 2002.

Lester J. Hubble, Nancy E. Emmel, Welsh & Hubble, P.C., St. Louis, for appellants.

Daniel K. Barklage, John R. Hamill III, Barklage, Barklage, et al., St. Charles, for respondent.

PAUL J. SIMON, P.J.

Sonya Rae Brooks, d/b/a D & S Wrecking and D & S Hauling, Excavating and Demolition (D & S) appeals the trial court's judgment awarding attorney's fees and pre-judgment interest in favor of Mid-

west Asbestos Abatement Corporation (Midwest).

D & S entered into a contract with the State of Missouri Highway and Transportation Commission (Commission) to demolish several homes in St. Louis, St. Charles, Jefferson and Franklin counties as part of the Highway 141 extension project. Pursuant to this contract D & S furnished a labor and material bond provided by Cumberland Casualty Insurance Company (Surety) in the amount of $750,918.25.

As part of the contract D & S agreed to remove or abate asbestos found in the homes. D & S sought to subcontract the asbestos removal, and entered into a written contract with Midwest wherein Midwest agreed to provide the necessary labor, equipment and materials for removal of 7,200 square feet of friable asbestos-containing material, and 36,000 square feet and 25 linear feet of Category 2 non-friable asbestos-containing material. The contract did not provide for the removal of any Category 1 non-friable asbestos-containing floor tile or mastic.

The contract provided that D & S would bear responsibility for additional compensation to Midwest in accordance with Midwest's normal fee schedule if the actual conditions or extent of asbestos removal differed from those initially anticipated by the parties. The contract also provided for a 1.5% per month interest charge on past due accounts. Paragraph ten of the agreement provided that "[D & S] agrees to pay all of [Midwest]'s attorney's fees, expenses, litigation costs and [Midwest]'s staff time; provided [Midwest] prevails to any extent by settlement or otherwise".

Before construction began the parties discovered the project would require removal of non-friable Category 1 asbestos-containing floor tile and mastic that had not been specifically provided for in the contract. Todd Strong, a duly authorized agent of the Commission, instructed D & S to remove the floor tile and mastic. On this basis D & S orally agreed they would pay Midwest to remove the materials. Tim Rabbitt, Midwest's vice-president of operations, reduced the terms of the oral contract to writing and signed the document on Midwest's behalf. Rabbitt gave the contract to D & S, but D & S did not sign the contract. Acting on D & S's oral assertions, Midwest commenced removal and submitted separate invoices to D & S for the Category 1 removal. D & S in turn submitted the invoices to the Commission. The Commission denied payment of the invoices. The Commission took the position that the payments it had already tendered to D & S pursuant to the general contract provided for the possibility of expenses incurred in connection with Category 1 removal. D & S refused to pay the invoices themselves. Consequently, Midwest ceased all Category 1 removal operations under the oral agreement. To that point Midwest rendered services in the amount of $29,301.52 removing the Category 1 asbestos according to the invoices submitted to D & S.

Midwest filed a five-count petition alleging breach of the oral contract (Count I), an amount due on the account (Count II), recovery in quantum meriut (Count III), and breach of the original written contract resulting in loss of profits and seeking an award of pre-judgment interest and attorney's fees (Count IV). In the fifth and final count Midwest claimed the Surety was liable for contribution under the bond paid by D & S. Midwest also sought attorney's fees and pre-judgment interest on all outstanding sums. Except in Count IV, Midwest contended the Public Prompt Pay Act, Section 34.057 RSMo 1999 (all further references hereinafter shall be referred to as RSMo 1999 unless otherwise indicated), authorized an award of attorney's fees and

pre-judgment interest. Sitting without a jury, the trial court found in favor of Midwest on Counts I, II and III, but found in favor of D & S on Count IV. The trial court awarded Midwest $29,301.52 in damages plus $15,818.00 in pre-judgment interest calculated at a rate of 1.5% from the dates of the invoices and $14,805.00 in attorney's fees. According to the trial court, the agreement and Section 431.180 formed the basis for the award of interest and attorney's fees. Finally, as to Count V the trial court found the Surety liable under the bond for "the same" damages, interest and attorney's fees entered against D & S. D & S's appeal concerns only the pre-judgment interest and attorney's fees portion of the trial court's judgment.

We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc.1976). We view the evidence in the light most favorable to the judgment. *Id.* We must defer to the trial court on factual issues and cannot substitute our judgment for that of the trial judge. *H.S. v. Board of Regents, Southeast Missouri State University*, 967 S.W.2d 665, 671 (Mo.App. E.D.1998). However, we independently evaluate the trial court's conclusions of law. *St. Louis County v. B.A.P.*, 18 S.W.3d 397, 404 (Mo. App. E.D.2000).

■ In its first point on appeal D & S argues the trial court lacked the statutory and contractual authority to award attorney's fees and pre-judgment interest pursuant to Midwest's breach of written and oral contract claims (Counts I & IV). D & S in effect adduces a three-part argument to support this point. First, D & S correctly points out that since the Commission hired D & S the work performed

amounted to a public works project governed by the Public Prompt Pay Act, Section 34.057. In spite of the public nature of the project, however, the trial judge erroneously relied on the Private Prompt Pay Act, Section 431.180, as the statutory authority for the award of pre-judgment interest and attorney's fees. Accordingly, D & S maintains the trial court used an improper basis to make the award. Second, D & S argues that, even assuming the trial judge had relied on the Public Prompt Pay Act, the statute does not permit an award of pre-judgment interest in a breach of contract action absent a showing of bad faith on the part of the general contractor. Finally, D & S argues that the trial court could not have relied on the contract itself as a basis for awarding pre-judgment interest and attorney's fees because Midwest requested interest and fees pursuant to the contract only in its loss of profits claim with respect to which the trial court found against Midwest and in favor of D & S.

■ We first address the trial court's erroneous citation to the Private Prompt Pay Act. We agree with Midwest that the mistaken citation should be ignored so as to address the substantive merits of the trial court's decision to award pre-judgment interest and attorney's fees. Although Midwest itself gave rise to the error by pleading entitlement to interest and attorney's fees under the Private Prompt Pay Act in its original complaint, Midwest corrected the mistake and properly requested relief under the Public Prompt Pay Act in its first amended complaint. On appeal from a court-tried case, we are concerned primarily with reaching a correct result, and thus we do not need to agree with the reasoning of the trial court to affirm the judgment. *Beck v. Shrum*, 18 S.W.3d 8, 10 (Mo.App. E.D. 2000). If a plaintiff is entitled to recovery upon any theory pleaded we will affirm the

judgment for the plaintiff regardless of the reasoning articulated by the trial court. *Webcon Group, Inc. v. S.M. Properties,* 1 S.W.3d 538 (Mo.App. E.D.1999).

Accordingly, we address the question of whether the trial court could have properly authorized the award of attorney's fees and pre-judgment interest under the Public Prompt Pay Act. Subsection (6) of the Act states that if a payment was not withheld in good faith for reasonable cause, the trial court may impose interest at the rate of one and one-half percent per month calculated from the date of the invoice and may, in its discretion, award reasonable attorney's fees to the prevailing party. As the statutory language makes clear, any contractor withholding payment from a subcontractor beyond time specified will be liable for late payment penalty interest if it is determined in court that withholding of payment was not in good faith for reasonable cause. *City of Independence for Use of Briggs v. Kerr Const. Paving,* 957 S.W.2d 315, 324 (Mo.App. W.D.1997). The issue of attorney's fees under the Prompt Pay Act is to be decided after the issue of good faith has been decided and if penalty interest is to be awarded. *Strain–Japan R–16 School Dist. v. Landmark Systems,* 51 S.W.3d 916, 921 (Mo.App. E.D.2001). The trial court may award attorney's fees only if the party prevails on the penalty interest issue. *Id.*

The trial court gave no specific indication as to whether it found that D & S's withholding was not in good faith for reasonable cause. Midwest admits that the Commission did not specifically reimburse D & S for the invoices pertaining to the Category 1 removal. This suggests D & S never received a "payment" that they could withhold, whether in good faith or bad faith, and that the trial court could not have reasonably held D & S liable for

withholding money they did not have. On the other hand, evidence was presented suggesting that the Commission felt that the Category 1 removal costs had already been provided for under the general contract with D & S and, accordingly, that the Commission had already tendered a "payment" to D & S for the removal. Todd Strong, the Commission's representative in the contract negotiations, testified that he believed "that based on the contract documents, that all these items should have been taken into consideration [by D & S] prior to the bidding process." Before Midwest began any Category 1 removal, the Commission held a meeting with both D & S and Midwest to address the issue of the Category 1 removal. Regarding the meeting Mr. Strong testified as follows:

Q: Were you the only representative from MODOT at that meeting, Mr. Strong?

A: Yes.

Q: Did you tell Mr. Twitchell, Ms. Brooks, Ms. Ricker [from D & S] or Mr. Rabbitt [from Midwest] that MODOT would pay to remove the floor tile or mastic?

A: No, sir, I did not.

Q: At any time have you told anyone at D & S that MODOT would pay D & S to remove the floor tile and mastic?

A: No, sir.

Q: To the best of your knowledge, has that been the position that MODOT has taken since the beginning of the project?

A: Yes.

Q: If they [the Commission] had taken another position, would you have been notified?

A: Yes, sir.

In response to invoices sent to the Commission by D & S, Paul Sterrett, legal counsel for the Commission, later sent a letter to D & S containing the following

pertaining to the Commission's position on the Category 1 removal:

> As you will recall, at a meeting on September 15, 1997, the issue of removal and disposal of category one material was raised, and it was made clear that it was the abatement contractor's job to remove the material. Since the issue was dealt with at the meeting, I do not believe there was any misunderstanding of the Highway Department's position in this regard. Consequently, we do not intend to make payment on these claims.

■ On this basis the trial judge could have found that the Commission had put both D & S and Midwest on notice *before* any Category 1 removal began that the Commission concluded that payment for the Category 1 removal was included in the original contract, and that it would therefore not be required to specifically reimburse D & S for any additional invoices related to the Category 1 removal. D & S would have known that they had assumed responsibility for payment and that the Commission would deny reimbursement on separately submitted invoices for Category 1 removal. Despite this awareness, D & S nonetheless ordered Midwest to proceed with the removal. Acting on these assertions Midwest began removal, but D & S admits they never paid Midwest for this work. Accordingly, the trial judge could have found that D & S had indeed been paid by the Commission and that D & S withheld payment from Midwest. The issue of whether the Commission paid D & S presents a question of fact the resolution of which requires deference to the trial judge. Where the trial court enters judgment without preparing findings of fact or conclusions of law, we will credit the facts favorable to the judgment and will affirm such judgment if it is supportable under any legal theory. *Stan-*

*field v. Grove,* 924 S.W.2d 611, 613 (Mo. App. E.D.1996).

Having found evidence on which the trial court could have determined that the Commission "paid" D & S for the Category 1 removal, we turn to the issue of whether D & S withheld that payment from Midwest in good faith and with reasonable cause. Where there is contradictory evidence as to whether a payment was withheld in good faith under the Prompt Pay Act presents a question of fact, the resolution of which is left to the fact finder. *City of Independence,* 957 S.W.2d at 321–322. Because the trial judge could have found that the Commission put both D & S and Midwest on notice before the Category 1 removal began that the Commission had already paid D & S to perform the removal, the trial court could logically have found that D & S would have been well aware they would bear responsibility for paying Midwest. On this basis the trial court could have found that D & S's decision to subsequently withhold payment from Midwest simply because the Commission had not specifically reimbursed D & S for the removal amounted to a bad faith withholding. Again, we are compelled to credit facts favorable to the judgment where the trial court enters judgment without preparing findings of fact. *Stanfield,* 924 S.W.2d at 613.

Because we hold that the trial court could have found that the Commission paid D & S for the Category 1 removal and that D & S withheld payment from Midwest in bad faith, the trial court accordingly could award interest and attorney's fees under the Public Prompt Pay Act. Since the Act authorizes such an award, we need not address D & S's claim that the trial court lacked a contractual basis to issue the award. D & S's first point is denied.

■ In its second point D & S argues that the trial court erred in awarding pre-

judgment interest because it hotly disputed the amount of damages it owed Midwest. A party is entitled to prejudgment interest, under Section 408.020 RSMo 1994, on damages for breach of contract if the amount is liquidated or readily ascertainable by reference to recognized standards. *Ken Cucchi Construction v. O'Keefe*, 973 S.W.2d 520, 528 (Mo.App. E.D.1998). The trial court found that, although damages were not liquidated, the amount D & S owed Midwest could easily be ascertained by reference to the total set of invoices submitted in regards to the Category 1 removal. D & S has offered no evidence to suggest the trial court could not have easily ascertained the proper measure of damages from the face of the invoices. Furthermore, Midwest correctly points out that the dispute pertained only to whether D & S should pay Midwest anything and not to how much D & S owed Midwest. Consequently the amount of damages was readily ascertainable. D & S's second point is denied.

In its final point D & S maintains that the trial court erred as a matter of law in entering a judgment against the Surety for penalty interest and attorney's fees. By its own admission Midwest does not dispute that Cumberland is not liable for attorney's fees and interest under the Missouri Prompt Pay Act. Both parties agree *City of Independence* governs the issue. *City of Independence* holds that a surety under bond posted pursuant to Section 34.057, a public works statute, is not liable for penalties incurred by the principal as a result of the principal's violations of the Public Prompt Pay Act. *Id.* at 324–25. Furthermore, the Prompt Pay Act itself does not specifically authorize the Surety's liability for interest and attorney's fees. The judgment against Cumberland holding it liable for interest and

attorney's fees is reversed. The judgment is affirmed in all other respects.

Midwest's motion for attorney's fees on appeal is denied.

Judgment affirmed in part; reversed in part.

GARY M. GAERTNER, SR., J., and KATHIANNE KNAUP CRANE, J., concur.