[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 140 
Tolar Construction, LLC ("Tolar"), appeals from an order of the DeKalb Circuit Court denying its motion for a new trial and granting the motion of Kean Electric Company, Inc. ("Kean"), for an award of attorney fees, interest, and other costs. Kean cross-appeals from the aspect of that order setting the date on which interest began to accrue. We affirm the trial court's judgment.
 Facts and Procedural History
Tolar is a general contracting company primarily specializing in the construction of large buildings such as school buildings. In March 2000, Tolar submitted a bid to, and secured a general contract from, the Fort Payne Board of Education for an *Page 141 
expansion of Wills Valley Elementary School, located in Fort Payne.
In the course of determining the amount of bid to submit, Tolar sought bids from numerous subcontractors for performance of various components of the expansion project. Kean was the winning subcontractor for electrical services, and it and Tolar entered into an electrical-subcontract agreement ("the subcontract"), which provided that Tolar would pay Kean a specified sum for its services upon completion and acceptance of the electrical work.[1] The date specified in the subcontract for Kean's completion of the electrical work was January 18, 2001.
In June 2000, Tolar began work on the expansion project; Kean began work as scheduled in August. The project proceeded smoothly until November, when the Board of Education informed Tolar that the roof for which materials had been ordered and on which work had already begun was not the roof the Board of Education intended for the school. More than a month elapsed before the roof situation was resolved, during which much of the scheduled electrical work was delayed. During this period, Kean found it necessary to withhold its normal complement of workers from the site; it sent just a few individuals each day to complete what little work could be accomplished pending resolution of the roof problem.
Tolar had to remove the roof it had already constructed and begin construction of a second roof. Weather conditions delayed this work until January 3, 2001, when Tolar was finally able to begin removing the roof underlayment. Within a few weeks, the roof was essentially completely replaced, and Kean began devoting more manpower to the electrical work. The roof delay, however, rendered impossible Kean's completion of its work by January 18, 2001.
Although Tolar understandably did not find fault with Kean for not having completed its work by January 18, the project manager for Tolar eventually began to voice some frustration with Kean's allegedly slow completion time. Correspondence increased between Lyle Kean, president of Kean, and representatives of Tolar, as each company began to complain about the deficient nature of the other's work. On April 27, 2001, Tolar's project superintendent hand-delivered a letter to Lyle Kean informing him that Kean needed to complete its work by the afternoon of May 3. On May 14, the project superintendent hand-delivered to Lyle Kean another letter, dated May 12; although that letter is not contained in the record, it has been represented to have essentially ordered Kean "to get off [the] job and do not come back." After completing some minor remedial measures, Kean complied with this order. Other than $3,000 paid to Kean by Tolar at an indeterminate point during the project, Tolar never paid Kean for its work.
On January 7, 2003, Kean sued Tolar in the DeKalb Circuit Court, alleging breach of contract and fraud. Tolar filed an answer generally denying the allegations and filed a counterclaim alleging that Kean had breached the subcontract. Tolar's counterclaim sought, among other relief, attorney fees pursuant to a provision in the subcontract. Kean answered Tolar's counterclaim by general denial and amended its own complaint to add a count seeking "interest costs, attorneys fees and reasonable expenses" under Ala. Code 1975, § 8-29-1 *Page 142 
et seq., officially designated the Deborah K. Miller Act by the Alabama Legislature ("the Miller Act"). Tolar answered this amendment by a general denial. Because the meaning and interaction of certain provisions of the Miller Act are at the heart of most of the issues contested on appeal, we set those provisions out at this point:
 Section 8-29-3(d), Ala. Code 1975, provides:
 "If the owner, contractor, or subcontractor does not make payment in compliance with this chapter [`Chapter 29. Timely Payments to Contractors and Subcontractors'], the owner, contractor, or subcontractor shall be obligated to pay his or her contractor, subcontractor, or sub-subcontractor interest at the rate of one percent per month (12% per annum) on the unpaid balance due."
 Section 8-29-4 provides, in part:
 "(a) Nothing in this chapter shall prevent the owner, contractor, or subcontractor from withholding application and certification for payment for any of the following reasons if there is a bona fide dispute over one or more of the following:
 "(1) Unsatisfactory job progress.
 "(2) Defective construction not remedied.
 "(3) Disputed work.
 "(4) Third party claims filed or reasonable evidence that a claim will be filed.
 "(5) Failure of the contractor, subcontractor, or sub-subcontractor to make timely payments for labor, equipment, and materials.
 "(6) Property damage to owner, contractor, or subcontractor.
 "(7) Reasonable evidence that the contract, subcontract, or sub-subcontract cannot be completed for the un-paid balance of the contract or contract sum.
 "(b) In the event that there is a bona fide dispute over all or any portion of the amount due on a progress payment from the owner, contractor, or subcontractor then the owner, contractor, or subcontractor may withhold payment in an amount not to exceed 2 times the disputed amount."
 Section 8-29-6 provides:
 "A contractor, subcontractor, or sub-subcontractor may file a civil action solely against the party contractually obligated for the payment of the amount claimed to recover the amount due plus the interest accrued in accordance with this chapter. If the court finds in the civil action that the owner, contractor, or subcontractor has not made payment in compliance with this chapter, the court shall award the interest specified in this chapter in addition to the amount due. In any such civil action, the party in whose favor a judgement is rendered shall be entitled to recover payment of reasonable attorneys' fees, court costs and reasonable expenses from the other party."
The case went to trial before a jury on March 7, 2005. At the close of Kean's case-in-chief, the trial court granted Tolar's motion for a judgment as a matter of law as to Kean's fraud claim.
Midday on March 9, the court and counsel agreed that Kean's claims pursuant to § 8-29-6, for attorney fees, interest, and expenses, and Tolar's claim for attorney fees, sought pursuant to a provision therefor in the subcontract, would be determined by the court, and the jury would be so advised. On March 10, immediately after the lunch recess and immediately preceding the time appointed for closing arguments, counsel renewed discussions with the court concerning how attorney *Page 143 
fees were to be referenced in the various verdict forms and how the issue might permissibly be argued to the jury. The court explained its intention to provide verdict forms and accordingly instruct the jury that in the event of an award of damages to either Kean or Tolar, the court would make a determination of the amount, if any, of attorney fees, "litigation costs," and interest the prevailing party would be entitled to recover from the other party, depending on the verdict of the jury and subsequent proceedings in the case. Counsel for both parties expressed their agreement with that approach. Thereafter, the court charged the jury, in pertinent part, as follows:
 "With regard to the dispute between Kean and Tolar, each party claims attorney's fees and litigation costs from the other. In addition, each party claims accrued interest on the amount of any verdict which is returned by the jury. To the extent that there are claims for attorney's fees, litigation costs, and interest, these matters are not for your determination. The Court will make a determination of the amount, if any, that a party is entitled to recover from the other for such matters, depending on the verdict of the jury and subsequent proceedings in this case."
The trial court read and explained the alternative verdict forms finding in favor of Kean or Tolar and awarding the prevailing party damages and noted that each provided a blank, preceded by a dollar sign, for the entry of the compensatory damages awarded, followed by the statement "plus attorney fees, litigation costs, and interest to be determined by the Court." At the conclusion of the jury charge, counsel for both parties stated that they had no exceptions or objections to the charge.
The next morning, March 11, 2005, the jury returned a verdict in favor of Kean on both its breach-of-contract claim and Tolar's breach-of-contract counterclaim, and awarded Kean $88,652.27 in compensatory damages, "plus attorney fees, litigation costs, and interest to be determined by the Court." The trial court entered a judgment on this verdict on March 23 and set a hearing on May 2 for "the determination of attorney's fees, litigation costs and interest, to be assessed against [Tolar]."
Tolar filed a motion for a new trial, which the trial court also heard on May 2.[2] After the hearing, the trial court, on May 12, 2005, entered its final judgment denying Tolar's motion for a new trial and further providing:
 "Title 8-29-1 et seq. Code of Alabama
(1975) hereinafter referred to as the Miller Act, provides that performance by a subcontractor in accordance with the provisions of a construction contract entitles the subcontractor to timely payment from the party with whom he contracted. The Miller Act further provides that interest accrues at the rate of 12% per annum for unpaid work and labor done and materials furnished in accordance with the contract. A contractor may, however, withhold payment from a subcontractor when there is a bona fide dispute as to job progress, defective construction, and other causes stated in said Act.
 "When a subcontractor brings a civil action to recover the amounts claimed to be due from the general contractor, if the Court finds that the general contractor *Page 144 
has not made payment in compliance with the Miller Act, the Court must award interest, reasonable attorneys' fees, court costs, and reasonable litigation expenses to the prevailing party.
 "Interest only accrues, however, when a party fails to make payment in compliance with the Miller Act. Since the Miller Act authorizes payment to be withheld when there is a bona fide dispute concerning job progress, defects in construction, and other statutorily specified reasons, interest does not accrue during such periods of dispute.
 "This court is satisfied that the amounts withheld by the Defendant, Tolar Construction Company, LLC [sic], were withheld because of a bona fide dispute within the meaning of the Miller Act. Accordingly, interest at the rate of 12% per annum did not begin to accrue until the jury reached its verdict on March 11, 2005.
 "[Kean's] request for the taxing of attorney's fees, court costs, and litigation costs has also come to be heard and considered.
 "On the basis of the findings of this Court, whether set out herein, or not, it is
 "ORDERED, ADJUDGED, AND DECREED as follows:
 "1. The Plaintiff, Kean Electric Company, Inc., shall have and recover of the Defendant, Tolar Construction, LLC, the sum of $88,652.27 plus attorney fees in the amount of $35,000.00 together with litigation costs and court costs in the amount of $1,518.35 for an aggregate of $125,170.62, for which said aggregate sum judgment is hereby entered in favor of [Kean] and against the Defendant, Tolar Construction, LLC.
 "2. Interest shall accrue on $88,652.27 at the rate of 12% per annum in the amount of $29.85[3] per day beginning March 11, 2005. Interest shall accrue on $36,518.35 at the rate of 6% per annum in the amount of $6.00 per day beginning with the date of this Final Judgment."
Tolar appeals the trial court's denial of its motion for a new trial — contending that the damages awarded Kean were excessive — and that court's award to Kean of attorney fees and litigation costs (case no. 1041448.) Kean cross-appeals from the trial court's decision to calculate the prejudgment interest only from the date on which the verdict was rendered (case no. 1041510).[4]
 Standard of Review "A strong presumption of correctness attaches to a jury verdict in Alabama, if the verdict passes the `sufficiency test' presented by motions for [a judgment as a matter of law and a renewed motion for a judgment as a matter of law]. Christiansen v. Hall, 567 So.2d 1338, 1341 (Ala. 1990); Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160
(Ala. 1988). This presumption of correctness is further strengthened by a trial court's denial of a motion for new trial. Christiansen, 567 So.2d at 1341. Denying, and to a more limited extent, granting, a motion for new trial is within the sound discretion of the trial court. See, Jawad v. Granade, 497 So.2d 471, 477 (Ala. 1986). This Court will not reverse *Page 145 
a judgment based on a jury verdict on the ground that the evidence was insufficient unless the evidence, when viewed in a light most favorable to the nonmovant, shows that the verdict was `plainly and palpably wrong and unjust.' Christiansen, 567 So.2d at 1341."
Carter v. Henderson, 598 So.2d 1350, 1354 (Ala. 1992). Further, "[t]he authority to disturb a jury verdict on the ground of excessive damages is one which should be exercised with great caution." Hammond v. City of Gadsden,493 So.2d 1374, 1378 (Ala. 1986). Therefore "this Court will not reverse the denial of a motion for a new trial unless the evidence, seen in the light most favorable to the nonmovant, shows that the jury verdict was plainly and palpably wrong."Zanaty Realty, Inc. v. Williams, 935 So.2d 1163,1166-67 (Ala. 2005).
Where the trial court has been called upon to determine a question of law, this Court's review is de novo. ContinentalNat'l Indem. Co. v. Fields, 926 So.2d 1033, 1035 (Ala. 2005).
 Analysis I. Were the Damages Awarded Excessive?
On appeal, Tolar argues that the damages awarded by the jury were excessive. In Ex parte Woodward Construction Design, Inc., 627 So.2d 393 (Ala. 1993), this Court recited the well-settled rule for calculating damages when one party has prevented another's performance:
 "`If the [general contractor] breached an essential and dependent feature of the contract, the [subcontractor] may abandon it and . . . sue on the contract and recover an amount equal to a proportion of the contract price which he has earned. . . .'"
627 So.2d at 394 (quoting Braswell v. Malone, 262 Ala. 323, 328, 78 So.2d 631, 636 (1955)) (emphasis omitted). Further, as we explained in Woodward Construction:
 "`"When a plaintiff sues on a contract to recover the amount he would have received for the full performance prevented by the defendant's breach, he seeks in effect to recover as damages the profit from performance of the contract which profit defendant's breach prevented him from earning. In such a case, plaintiff has the burden of alleging and proving not only (a) what he would have received from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom). Unless he proves both of those facts, he cannot recover as damages the profits he would have earned from full performance of the contract."'"
627 So.2d at 394 (quoting Whiting v. Dodd,39 Ala.App. 80, 83, 94 So.2d 411, 414 (1957), quoting in turn Allen,Heaton McDonald, Inc. v. Castle Farm Amusement Co.,151 Ohio St. 522, 526, 86 N.E.2d 782, 784 (1949)).
Tolar's argument that the damages award was excessive, however, is limited in scope: "The jury verdict in favor of Kean against Tolar was excessive because the jury failed to give Tolarproper credit for payments made by Tolar which were necessary to complete the terms of the Subcontract Agreement." (Tolar's brief, at 13; emphasis added.) Tolar then cites the above-quoted rule of law from Woodward Construction, as well as what it says was "uncontroverted" evidence indicating that Tolar paid over $43,000 in "completion payments" to third parties, as support for its argument. (Id. at 15-16.)
The rule set forth in Woodward Construction, however, does not necessarily support Tolar's argument. That rule requires *Page 146 
the proffer of two types of evidence: (a) what the nonbreaching party (Kean) would have received had the contract been fully discharged, and (b) what it would have cost the nonbreaching party (Kean) to complete the contract had it been fully discharged. The first type of evidence was presented by Kean through the introduction of both the written subcontract as well as testimony corroborating the subsequent increase in the contract price. The second type of evidence was presented by Kean in the form of proof of the amounts that Kean would have owed its sub-subcontractors for completing their work. Tolar does not challenge any of this evidence on appeal.
Tolar's argument is that Kean did not fully perform its subcontract and that Tolar consequently was forced to find third parties to complete certain aspects of it. Although there is a dispute between the parties as to whether Tolar provided credible evidence indicating the amount it paid, resolution of that dispute is not required to resolve Tolar's argument. Even if Tolar had presented concrete evidence, agreed by both parties to be accurate, indicating the amount of money Tolar had spent to complete Kean's electrical subcontract, such evidence does not indicate the amount of money Kean would have had to spend to complete the subcontract. For instance, any third party completing "last minute" work at the behest of Tolar could, and probably would, have charged more than an original subcontractor or sub-subcontractor would have, because of "start up" transitioning costs, and may have charged a premium in recognition of the immediacy of Tolar's needs. Had Tolar not breached the contract, however, Kean's sub-subcontractors would have been obliged to perform their work at the agreed-upon price, without any "discontinuity" costs. In short, the rule ofWoodward Construction does not envision that the completion-cost offset would be computed from the perspective of the breaching party, but rather that it would be computed from the perspective of the nonbreaching party.
Moreover, a review of the jury instructions indicates that the jury was never charged with respect to completion payments. Rather, the court simply stated:
 "Damages for breach of contract is that sum which would place the injured party in the same condition it would have occupied if the contract had not been breached. . . . The law defines substantial performance as performance of all the important parts of a contract, but the doctrine of substantial performance does not require a full or exact performance of every slight or unimportant detail. If a party to a contract substantially performs a contract as I have defined substantial performance to you, the party may recover the contract price less the reasonable cost of remedying any trivial defects or omissions left to be performed."
(Emphasis added.)
The quoted language does not speak of deducting the cost of "completion payments," but rather the likely smaller sum necessary to remedy "trivial" defects or omissions caused by the failure to fully perform. Additionally, the instruction does not clarify whether the jury was to determine how much it would cost to remedy those "trivial defects or omissions" from the perspective of the breaching party or the substantially performing party. Because Tolar failed to object to the trial court's jury instructions, those instructions are the law of the case, and Tolar cannot now complain about the jury's obedience to them.
Because Tolar has not otherwise challenged Kean's presentation of evidence indicating the amount of damages to which it *Page 147 
was entitled, but instead has presented evidence indicating only the amount of money Tolar spent in consequence of its own breach, we hold that the trial court did not err in denying Tolar's motion for a new trial, and we thus affirm the trial court's judgment as to this ground.
 II. Did the Trial Court Comply with the Miller Act?
Tolar and Kean have appealed from separate features of the trial court's May 12, 2005, order. Tolar argues that the court erroneously awarded Kean attorney fees and litigation costs pursuant to the Miller Act. Kean cross-appeals from the trial court's use of the date the verdict was rendered as the triggering date for calculating the 12% interest.
The Miller Act was enacted in 1995 and serves as Alabama's equivalent of the "prompt-payment acts" enacted in many other states. See John W. Hays, Prompt Payment Acts: RecentDevelopments and Trends, 22 Constr. Law. 29 (2002). The Miller Act affords contractors, subcontractors, and sub-subcontractors special remedies against owners, contractors, and sub-contractors, respectively, when the latter improperly withhold payment.
Tolar's "Statement of the Issues" (Tolar's brief, at 4), states the second issue as being "[w]hether the trial court erred in awarding Kean attorney fees, litigation costs and court costs pursuant to Ala. Code [1975,] § 8-29-1, et seq. known as the Miller Act." In the argument section of its brief, it restates that issue as follows:
 "The trial judge erred in awarding Kean attorney fees, litigation costs and court costs pursuant to Ala. Code [1975,] § 8-29-1, et seq., known as the Miller Act, after the trial judge found that the monies withheld by Tolar were because of a bona fide dispute as to what amount Kean was owed."
(Id. at 17.)
Tolar does not separately argue that the trial court erred in allowing Kean interest at 12% per annum, beginning with the date of the jury verdict — March 11, 2005 — but does challenge the propriety of the award of such interest in connection with its contention that because no interest should have been awarded under Ala. Code 1975, § 8-29-3(d), no attorney fees should have been awarded. As Tolar frames the argument:
 "[A]ttorneys' fees and other litigation costs should only be awarded to the prevailing party if the trial court determines that the contractor is subject to a pre-judgment interest penalty. The trial court in this case determined that Tolar had a bona fide reason for withholding payment for Kean; therefore, pre-judgment penalty interest was not proper. . . . Therefore, the trial judge erred when it awarded attorneys' fees, litigation costs, and court costs to Kean. . . ."
(Tolar's brief, at 24-25.)
Tolar links the propriety of an award of prejudgment interest and the propriety of an award of attorney fees by "collapsing" the text of Ala. Code 1975, § 8-29-6. Tolar states in its principal brief that
 "[t]he statute also provides that `if the court finds . . . that the . . . contractor . . . has not made payment in compliance with this chapter, the party in whose favor a judgment is rendered shall be entitled to recover payment of reasonable attorneys' fees, court costs and reasonable expenses from the other party.' Ala. Code § 8-29-6 (1995)."
(Tolar's brief, at 18.) As seen from a reading of the complete text of the portion of § 8-29-6 quoted only partially by Tolar, what Tolar merges into one sentence constitutes *Page 148 
two separate sentences, the first of which mandates awarding 12% interest if the court finds "that the . . . contractor . . . has not made payment in compliance with [the Act]," and the second of which provides that "the party in whose favor a judgement is rendered shall be entitled to recover payment of reasonable attorneys' fees, court costs and reasonable expenses from the other party." Thus, under a plain reading of §8-29-6, only Tolar, if found not to have made payment in compliance with the act, could have been penalized by an award of interest made to Kean, whereas either party, so long as it was "the party in whose favor a judgement [was] rendered," would be entitled to recover attorneys' fees, court costs, and reasonable expenses "from the other party." Tolar implicitly recognized this distinction in its discussions with the judge during trial, agreeing with the judge's explanation of his proposed instructions to the jury, as well as his proposed formulation of a verdict form, whereby the jury, if it found in favor of Tolar, would authorize payment to Tolar of "attorney fees, litigation costs, and interest to be determined by the Court." Tolar's entitlement to "litigation costs" in the event of a verdict in its favor could only be referable to the provision in § 8-29-6 for recovery of "reasonable expenses," in addition to court costs, by "the party in whose favor a judgment is rendered."
Tolar argues, however, that decisions by courts in four other states that have adopted prompt-payment acts provide support for Tolar's contention that the Miller Act authorizes an award of attorney fees only if Tolar "has not made payment in compliance with [the Act]," § 8-29-6, and its withholding of payment was not pursuant to "a bona fide dispute." Ala. Code 1975, §8-29-4. Our reading of the cases Tolar cites from Missouri, Tennessee, Florida, and Ohio does not persuade us that they provide support for Tolar's position. We address those cases in the order in which Tolar presents them in its brief to this Court, noting the pertinent facts and holdings.
In Midwest Asbestos Abatement Corp. v. Brooks,90 S.W.3d 480 (Mo.Ct.App. 2002), the appellate court did say concerning the Missouri Public Prompt Pay Act, "[t]he trial court may award attorney's fees only if the party prevails on the penalty interest issue." 90 S.W.3d at 484. The court explained, however, that this holding was based on subsection 6 of that act, which expressly stated that if the trial court determined that a payment "was not withheld in good faith for reasonable cause," in connection with one of the causes specified elsewhere in the act, "the court may impose interest at the rate of one and one-half percent per month calculated from the date of the invoice and may, in its discretion, award reasonable attorney's fees to the prevailing party." 90 S.W.3d at 484. Thus, unlike the separate and distinct treatment accorded enhanced interest and attorney fees in the Miller Act, the Missouri Prompt Pay Act treats them together in one sentence, expressly stating that they may be awarded only if payment had not been withheld "in good faith for reasonable cause."
Similarly, in Sun Splash Painting, Inc. v. HomesteadVillage, Inc., No. M2002-0853-COA-R3-CV, Oct. 15, 2003 (Tenn.Ct.App. 2003) (not reported in S.W.3d), an unpublished opinion, the pertinent provision of "Tennessee's Prompt Pay Act of 1991" specified that "`[r]easonable attorney's fees may be awarded against the non-prevailing party; provided, that such non-prevailing party has acted in bad faith.'" The plaintiff subcontractor in that case acknowledged that bad faith was a precondition to an award of attorney fees, but *Page 149 
simply argued that bad faith had been established.
In Fence Masters, Inc. v. Zurqui Construction Service,Inc., 836 So.2d 1088 (Fla.Dist.Ct.App. 2003), the contractor on a municipal public project had received full payment from the municipality, but had withheld payment of a balance of approximately $166,000 claimed by one of its sub-contractors despite the fact that, after accounting for all possible offsets, there was no dispute that approximately $96,000 was owed to that subcontractor. The subcontractor sued for payment of the entire contract balance and included a count alleging violation of Florida's "public projects" prompt-payment act, which, among other things, would entitle the subcontractor to expedited remedies. The trial court denied the subcontractor's motion for the entry of a final judgment pursuant to the act with respect to the undisputed amount owing. The Court of Appeals reversed the judgment and remanded the case with instructions to the trial court to enter final judgment for the subcontractor under the act "in the principal amount" of the undisputed balance. The opinion of the Court of Appeals does not in any way address the subjects of enhanced interest or attorney fees and therefore seemingly has no relevance to the issues at hand.
The last case Tolar cites is Masiongale Electrical-Mechanical,Inc. v. Construction One, Inc., No. 02AP-138, Sept. 10, 2002 (Ohio Ct.App. 2002) (not reported in N.E.2d), also an unpublished opinion. With respect to the contested award of attorney fees, the Ohio Court of Appeals noted that the Ohio "Prompt Payment Act" provided in pertinent part that "`the court shall award the prevailing party reasonable attorney fees and court costs'" but that in making a determination to award attorney fees "`the court shall consider all relevant factors, including, but not limited to . . . [t]he presence or absence of good faith allegations or defenses asserted by the parties,'" and that, "`[t]he court shall not award attorney fees . . . if the court determines . . . that the payment of attorney fees to the prevailing party would be inequitable.'" That same section of the Prompt Payment Act provided that a sub-contractor might sue a contractor under the act if the contractor "has not made payment in compliance with" the act. The Ohio Court of Appeals affirmed the trial court's judgment adopting a magistrate's findings that the reasons put forth by the defendant contractor for having withheld the disputed sums did not "constitute good faith allegations or defenses" and that the contractor had "wrongfully withheld" the disputed amount. Thus, the court simply upheld application of statutory features absent from the Miller Act.
The interpretation of § 8-29-6 is an issue of first impression for this Court.
 "In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
 "`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'
 "Blue Cross Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992)); see also Tuscaloosa County Comm'n v. Deputy Sheriff's Ass'n, 589 So.2d 687, 689
(Ala. 1991); Coastal States Gas *Page 150 Transmission Co. v. Alabama Pub. Serv. Comm'n, 524 So.2d 357, 360 (Ala. 1988); Alabama Farm Bureau Mut. Cos. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala. 1984); Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534, 536 (Ala. 1983); Town of Loxley v. Rosinton Water, Sewer, Fire Protection Auth., Inc., 376 So.2d 705, 708 (Ala. 1979). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala. 1997)."
DeKalb County LP Gas Co. v. Suburban Gas, Inc.,729 So.2d 270, 275-76 (Ala. 1998).
Looking at the plain meaning of § 8-29-6, we conclude that the statute provides for awarding attorney fees irrespective of whether a party is entitled to interest under the Miller Act. The statute allows a subcontractor to file a civil action to recover the amount due, along with the interest, if any, to which it is entitled under the Miller Act. Certainly, if a subcontractor was not entitled to interest under § 8-29-3(d), it could nonetheless recover "the amount due" in a civil action filed under § 8-29-6, which allows for the award of attorney fees, court costs, and reasonable expenses to the prevailing party "in any such civil action." The reference to "any such" civil action cannot logically refer only to a situation in which the plaintiff contractor, subcontractor, or sub-subcontractor is awarded interest. "[A]ny such" modifies "civil action," the definition and nature of which does not change baaed upon the relief eventually awarded; its contours are shaped by what is pleaded, not what is attained. Therefore, "any such civil action" simply refers to any civil action brought under the Miller Act to recover money held by an owner, contractor, or subcontractor.
That a provision for attorney fees in prompt-payment acts structured like the Miller Act can "cut both ways" is noted inPrompt Payment Acts: Recent Developments and Trends, supra, at 34, by the observation that "[m]andating or allowing an award of attorneys' fees to the prevailing party should discourage frivolous excuses from owners and contractors for failing to pay promptly and should discourage contractors and subcontractors from demanding payments that are not due." Unlike the prompt-payment acts in the cases cited by Tolar, the allowance for attorney fees found in the Miller Act is not tethered to provisions conditioning the award upon a showing of some sort of bad faith. Had the trial court rendered a judgment in Tolar's favor, Tolar would have been entitled to recover attorney fees under the Miller Act despite the fact that it was not entitled to any enhanced interest.
We hold that the statute allows attorney fees to be awarded to the party in whose favor a judgment is rendered, regardless of whether interest is warranted. Thus, we conclude that Kean, as that party, was entitled to attorney fees as determined by the court, and we affirm the trial court's order awarding attorney fees.
In its cross-appeal, Kean argues that although the trial court correctly determined Kean was entitled to the interest provided for in the Miller Act, the court erred in deferring the accrual of enhanced prejudgment interest to the date the jury rendered its verdict, rather than from the *Page 151 
date Kean was terminated from the project by virtue of the delivery of the letter dated May 12, 2001. Although Ala. Code 1975, § 8-29-3(d), does not specify the date from which interest at the rate of 12% per annum is to accrue, the legislature obviously intended prejudgment interest to accumulate on any payment unjustifiably withheld in noncompliance with the Miller Act, as of the time the payment was due under the act. Section 8-29-3(b) provides, in pertinent part, that "the contractor shall timely pay to the subcontractor in accordance with the payment terms agreed to by the contractor and the subcontractor, but if payment terms are not agreed to, then within seven days of receipt of payment from owner. . . ." The subcontract between Tolar and Kean contains several provisions specifying the preconditions for, and the timing of, both interim payments and the final payment. As noted, however, § 8-29-4 authorizes a contractor to withhold payment from a subcontractor "if there is a bona fide dispute over one or more" of seven specified circumstances.
In the trial of the dispute between Tolar and Kean, the parties agreed, and the trial court instructed the jury, that the court would decide any claim for interest, determining the amount,if any, that either party was entitled to recover as interest from the other depending on the jury's verdict and subsequent proceedings in the case. This instruction, to which neither party objected or took exception, became "the law of the case," authorizing the trial judge to act in conformity with it.Alabama Dep't of Transp. v. Land Energy Ltd.,886 So.2d 787, 795 (Ala. 2004). Because of that agreed-to procedure, the court did not instruct the jury concerning the "bona fide dispute" principle of § 8-29-4 or the "payment in compliance" concept of § 8-29-3(d); rather, it reserved to itself the determination of those statutorily indispensable preconditions to an award of prejudgment interest. The jury verdict in favor of Kean on its breach-of-contract claim did not resolve the more particular issue whether there had been a bona fide dispute between the parties of a type described by §8-29-4. The trial court expressly addressed in its final judgment the considerations relevant under the Miller Act and determined that Tolar had withheld the payment in question "because of a bona fide dispute within the meaning of the Miller Act." Therefore, the court permissibly concluded that "interest at the rate of 12% per annum did not begin to accrue until the jury reached its verdict on March 11, 2005."
Kean next argues that, even if such a determination by the court might have been generally allowable under the subcontract and the court's charge to the jury, a statement by Tolar's counsel at the May 2 hearing altered the situation. Specifically, Kean refers to the fact that the court asked Tolar's counsel at that hearing, after explaining that it was not asking him to concede or to admit that Kean was due any interest but to assume for the moment that the court was going to award interest at the rate of 12%, "[w]hat's the date that you claim that it was due to be paid or that the interest rate starts." Tolar's counsel answered that, "as far as strictly focusing on the day[,] would probably be January 1, 2002." Kean now argues to this Court that "[i]t was not within the discretion of the trial court to take a position that was not requested by Tolar and has not been requested in this appeal." The flaw in this analysis is that Tolar has no burden of persuasion on appeal concerning the propriety of the trial court's ultimate determination of the appropriate starting date for the imposition of enhanced prejudgment interest. Only Kean, as the cross-appellant as to that issue, has *Page 152 
a burden of persuasion in that regard, to establish, by argument properly supported by citation to relevant authority, that the trial court erred in its application of the provisions of the Miller Act. See Rule 28(a)(10), Ala. R.App. P. Kean cites no authority for the proposition that the statement by Tolar's counsel would preclude the trial court from determining, in the final analysis, a different date for the ending of the period of the "bona fide dispute" between the parties. Therefore, we find no error in the trial court's resolution to that issue, given the particular procedural posture of the case, and we affirm its judgment insofar as it calculates interest from the date of the jury verdict.
Kean has also filed with this Court a motion seeking additional attorney fees for its work in defending the trial court's judgment and in preparing its cross-appeal. "`In Alabama and most other jurisdictions, the general rule is that attorney's fees and expenses of litigation are not recoverable as damages, in [the] absence of a contractual or statutory duty, other than [by] a few recognized . . . equity principles.'" Ex parteBurnham, Klinefelter, Halsey, Jones Cater, P.C.,674 So.2d 1287, 1290 (Ala. 1995) (quoting Highlands UnderwritersIns. Co. v. Eleganté Inns, Inc., 361 So.2d 1060,1065-66 (Ala. 1978)). In support of their request for additional attorney fees, counsel for Kean cite the previously discussed feature of the Miller Act providing that "the party in whose favor a judgement is rendered shall be entitled to recover payment of reasonable attorneys' fees, court costs and reasonable expenses from the other party." Ala. Code 1975, §8-29-6.
Under our rule of statutory interpretation, we are obliged to give effect to the statute exactly as it is written. DeKalbCounty LP Gas, supra. The words "in whose favor a judgement is rendered" create a limited category. A key feature of the limitation is the word "rendered." Trial courts "render" judgments. Rule 58(a), Ala. R. Civ. P. Those judgments may thereafter be affirmed or reversed, in whole or in part, by an appellate court in the event of an appeal. Although this Court may sometimes also "render" a judgment, the occasions when it does so are infrequent.
Because the statute employs the term "rendered," we conclude that it applies to two situations, one of which was likely unanticipated. The most obvious situation in which the statute applies is when a trial court "renders" a judgment in a case brought under the Miller Act. The other situation, which we readily concede was likely not contemplated when the legislature drafted this statute, arises in the occasional situation where this Court finds it appropriate not only to reverse the judgment of a lower court but also to "render" a judgment in a party's favor. It undeniably appears that, in that regard, "the ramifications of the words are inefficient or unusual,"DeKalb County LP Gas, supra, but such considerations are of no import to this Court in the event the text is clear.
In the instant action, we have affirmed the trial court's judgment in all respects. We have not "rendered" any judgment. Thus, at the appellate stage, Kean has not enjoyed the rendition of a judgment in its favor, but only the affirmance of a judgment previously rendered in its favor. Because Kean's factual situation falls outside of that described by the Miller Act, we deny its motion for additional attorney fees for its counsel's appellate work.
 Conclusion We affirm the trial court's judgment. *Page 153 
1041448 — AFFIRMED.
1041510 — AFFIRMED.
NABERS, C.J., and SEE, STUART, and BOLIN, JJ., concur.
[1] Although not directly relevant to our disposition of these appeals, the agreed-to sum was $226,975 but, according to testimony proffered by Kean, was later increased to $230,331.82.
[2] The parties do not raise or discuss the issue whether the March 23 "judgment" was a judgment from which an appeal would have lain (Rule 54(a), Ala. R. Civ. P.) so as properly to be the subject of a motion for a new trial (see Rule 59(a) and (b), Ala. R. Civ. P.); we, therefore, do not address that issue.
[3] We note that our calculation of interest, using the amounts in the trial court's order, results in an interest amount of $29.15 per day.
[4] Other than taking issue with the date for which prejudgment interest is calculated, Kean does not argue that prejudgment interest or postjudgment interest should have been differently calculated. See Ala. Code 1975, §§ 8-8-8
and -10.