982 So.2d 1091 (2006)
Angela M. SAUNDERS and Philip Saunders
v.
Theresa LAWSON.
No. 2041111.
Court of Civil Appeals of Alabama.
December 1, 2006.
Rehearing Denied January 12, 2007.
*1092 Patrick O. Miller and Timothy P. Pittman of Dick, Riggs, Miller & Stem, L.L.P., Huntsville, for appellants.
Gregory A. Reeves of Edwards, Mitchell & Reeves, Decatur, for appellee.
PER CURIAM.
Angela M. Saunders and Philip Saunders appeal from a judgment ordering their residence to be sold to enforce a materialman's lien purportedly perfected by Theresa Lawson.
Brian Homes, Inc. ("Brian Homes"), a homebuilding company, developed certain parcels of property in Madison County by building single-family residences on those parcels. During the spring of 2003, Brian Homes obtained a construction loan secured by a mortgage upon those parcels ("the senior mortgage"). Lawson installed various types of flooring materials and lighting fixtures in numerous residences, including the residence built on Lot 35  the residence purchased by the Saunderses. In the fall of 2003, the construction loan secured by the senior mortgage was paid in full with the proceeds of loans made to the ultimate occupiers of the residences, including moneys obtained by the Saunderses from Chase Manhattan Mortgage Corporation ("Chase").[1] At the time that the construction loan was paid in full, Lawson had not perfected or recorded a materialman's lien as to the residence on Lot 35. In fact, it is undisputed that neither Chase nor the Saunderses had any notice of a junior or secondary lien at the time the Saunderses purchased the residence built on Lot 35.
After Brian Homes had failed to pay Lawson with proceeds from the sale of the completed residence, Lawson filed an action against Chase and the Saunderses in March 2004 seeking the declaration of the existence of a lien in the amount of $8,054.72 as to the residence on Lot 35. The recording of that lien occurred several months after the Saunderses had paid Brian Homes in full and after the recording of Chase's mortgage to the Saunderses. Nonetheless, Lawson asserted that her *1093 lien took priority over Chase's mortgage pursuant to § 35-11-211, Ala.Code 1975, and she requested that the trial court order a sale of the Saunderses' residence in order to pay Lawson the amount due on her lien. The trial court entered a summary judgment declaring that Chase's mortgage took priority over any lien Lawson might claim, and pursuant to Rule 54(b), Ala. R. Civ. P., it determined that there was no just reason for delay in entering a final judgment as to its determination of the priority of liens.[2] However, the trial court reserved for trial the issue whether Lawson could prove the existence of a valid materialman's lien against the Saunderses' residence on Lot 35.
The trial court conducted an ore tenus proceeding on the remaining issue in this case on April 26, 2005, and it entered a judgment on May 4, 2005. The trial court declared that Lawson held a valid lien against the Saunderses' property and entered a money judgment in the amount of $8,054.72 plus interest. The trial court ordered that the Saunderses' property be sold to satisfy Lawson's judgment unless the total amount of the lien was not paid within 30 days. The trial court's judgment concluded with the following paragraph:
"The court believes this decision is manifestly unfair to the homeowner who is an innocent party. However, the court is required to enforce the law as enacted by the legislature. By this decision, the court urges the Alabama Legislature to change the law in question to provide that materialmen, subcontractors, suppliers, etc. be required to file their liens before closing, rather than 6 months after closing."[3]
In this appeal, the Saunderses challenge the trial court's determination that Lawson properly perfected a materialman's lien as to the their property. Ala. Code 1975, § 35-11-210, provides for two types of materialman's liens: "(1) a lien for the full price of the materials furnished and (2) a lien for the amount of the unpaid balance due the contractor from the owner." Abell-Howe Co. v. Industrial Dev. Bd. of Irondale, 392 So.2d 221, 224 (Ala. Civ.App.1980). To establish the right to a full-price lien, the supplier must either (1) have an express contract with the property's owner or the owner's agent to supply the materials or labor, or (2) have given notice to the owner in writing of the cost of the materials or labor to be supplied before beginning work or delivering materials and the owner must not have responded in writing that the owner will not be liable for payment. See Ala.Code 1975, § 35-11-210; Davis v. Gobble-Fite Lumber Co., 592 So.2d 202, 206 (Ala.1991); see also Keith C. Kantack, A Guide to Mechanics' Liens in Alabama, 61 Ala. Law. 202 (2000).
The Saunderses contend that Lawson did not meet the statutory requirements of § 35-11-210, and specifically they assert that Lawson was unable to prove the existence of a contract with Brian Homes. In this case, Lawson was unable to present *1094 evidence of an express contract between her business and Brian Homes; at most, she was able to prove that the two concerns had an on-going course of business.[4]
At trial, Lawson testified and offered the invoices that she had sent Brian Homes after providing lighting, flooring, and installation services at the house under construction on Lot 35. Instead of a written contract, Lawson produced the default judgment that she had obtained against Brian Homes for its failure to pay Lawson for the materials and labor she had supplied to Brian Homes during the construction of the residence on Lot 35. In Davis, supra, our Supreme Court reviewed the proper method by which a materialman can perfect a full-price lien pursuant to the statutes.
"`The lien . . . "is a creation of law and not of contract" and the lien must be perfected by compliance with statutory requirements. Furthermore, "a valid contract of purchase is the prerequisite, and the materialman must establish the same with the owner or proprietor, or his agent, as those terms are employed in the statute." With reference to the contractual prerequisite, two bases of liability are provided by the statute, "One that written notice had been given, followed by mere silence of the owner (we think that this would create an implied contract, assuming that the materials were furnished); the other, a positive assent constituting the owner the purchaser of the material" (an express contract).'"
Davis, 592 So.2d at 206 (quoting Buettner Bros. v. Good Hope Missionary Baptist Church, 245 Ala. 553, 557, 18 So.2d 75, 78 (1944)). Our Supreme Court then noted that the text of the statute clearly requires that in order to procure a full-price lien the materialman must give notice to the owner in writing of its intent to claim a lien before any material or labor is furnished. See Davis, 592 So.2d at 206-07 (citing § 35-11-210, Ala.Code 1975). In Davis, our Supreme Court noted that the fact that written notice was not given until after some of the material or labor had been supplied prevented Gobble-Fite from perfecting a full-price lien.
Similarly, in this case, Lawson was able to show that she did indeed provide flooring, lighting, and installation services, and thus, as noted by the dissenting judges, Lawson may have demonstrated the existence of an implied contract. However, she did not provide any evidence indicating that notice in writing was given to Brian Homes or the Saunderses before she incurred those expenses and provided those items and services, and such prior written notice, as our Supreme Court noted in Davis, is clearly mandated by the statute. Because strict compliance with the statute is a prerequisite for perfecting a lien, we conclude that Lawson failed to prove that she was entitled to a full-price lien on the residence on Lot 35. See Davis, supra, and Buettner Bros., supra. Based upon that analysis, we must also conclude that the trial court erred to the extent that that court determined that Lawson was entitled to a full-price lien with respect to the Saunderses' property.
Because Lawson did not qualify for a full-price lien, the only remaining lien potentially available to Lawson pursuant to the statute was an "unpaid-balance" lien. An unpaid-balance lien gives an unpaid supplier of labor and/or materials a lien on any funds in the hands of the owner that *1095 the owner owes to the original contractor. See Abell-Howe, supra, in which we discussed the prerequisites to properly attach an unpaid-balance lien:
"As for the unpaid balance lien, which is also included in § 35-11-210, a supplier who was not the original contractor . . . must give the owner notice of his intent to claim a lien on the owner's property before filing a verified statement claiming a lien. § 35-11-218, [Ala. Code 1975]. Where there is no unpaid balance due or to become due to the contractor, no lien can attach."
Abell-Howe, 392 So.2d at 225 (footnote omitted). Thus, an unpaid-balance lien can only be perfected when there is an unpaid balance due the contractor from the owner. In this instance, the Saunderses paid Brian Homes with the proceeds of their Chase mortgage loan in September 2004, but Brian Homes failed to pay Lawson; thus, there was no "unpaid balance" remaining in March 2005, the time Lawson attempted to perfect her lien as to the Saunderses' property.
In addition, we find Leatherwood v. Creighton, 571 So.2d 1136 (Ala.Civ.App. 1990), to be instructive as to the application of the common law to materialman's liens. In Leatherwood, after the general contractor filed for bankruptcy protection, a subcontractor brought an action against the homeowner, asserting, in addition to an unpaid-balance lien, a breach-of-contract claim and an unjust-enrichment claim in an attempt to recover his costs. This court affirmed a judgment against the subcontractor, holding that because the homeowner had already paid the general contractor, "the homeowner ha[d] not been unjustly enriched due to the fact that he ha[d] already paid the contractor" for the materials and labor supplied by the subcontractor. Leatherwood, 571 So.2d at 1138. In this case, then, neither the lien statutes nor the common law permits Lawson to assert a lien based upon an "unpaid balance" because the Saunderses paid Brian Homes in full during the fall of 2003, months before Lawson first attempted to perfect a lien as to the residence on Lot 35 in March 2004. See also Manning Serv. Co. v. Community Blood & Plasma Corp., 613 So.2d 1281, 1283 (Ala.1993).
Thus, to the extent that the trial court determined that Lawson had perfected an enforceable unpaid-balance lien, we conclude that that determination was erroneous. Moreover, because Lawson had not perfected either a full-price lien or an unpaid-balance lien against the Saunderses' property, the trial court's judgment in her favor cannot stand.
Based upon the foregoing facts and authorities, we reverse the trial court's judgment determining that Lawson holds an enforceable materialman's lien as to the Saunderses' property, and we remand the cause to the trial court for the entry of a judgment in favor of the Saunderses.[5]
REVERSED AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., dissents, with writing.
BRYAN, J., dissents, with writing, which MURDOCK, J., joins.
*1096 MURDOCK, Judge, dissenting.
Lawson v. Brian Homes, Inc., [Ms. 2040619, Oct. 20, 2006] ___ So.2d ___ (Ala.Civ.App.2006) ("Lawson I"), dealt with the issue whether Theresa Lawson's lien has a priority over the liens securing the purchase-money loans obtained by the ultimate purchasers of the real property at issue.[6] In the present case, however, the issue is whether Lawson has a full-price lien at all. In reaching a conclusion that Lawson does not have a full-price lien, the majority in the present case implies that there was no contract between the owner, Brian Homes, and Lawson sufficient to create a mechanic or materialman's lien under § 35-11-210, Ala.Code 1975. I disagree. There was a contract created between those two parties, and it was fully sufficient to satisfy the statutory requirement of a contract and/or notice between the lienholder and the owner. See Southern Sash of Huntsville, Inc. v. Jean, 285 Ala. 705, 235 So.2d 842 (1970). Further, contrary to the main opinion's statement that Lawson was merely a sub contractor, see ___ So.2d at ___ n. 4, Lawson contracted directly with Brian Homes to perform work and to provide materials and, as Judge Bryan points out in his special writing, Brian Homes was the owner of the property in question. Lawson timely filed a verified statement of her lien within the six-month period required by §§ 35-11-213 and -215, Ala.Code 1975. Accordingly, I must respectfully dissent.
BRYAN, Judge, dissenting.
Davis v. Gobble-Fite Lumber Co., 592 So.2d 202 (Ala.1992), the case cited by the main opinion for the proposition that a full-price lien is only available to a materialman if the materialman either has an express contract with the owner or has given notice to the owner before delivering the materials, is factually distinguishable from the case now before us. In Davis, the owner was not the builder to whom the materialman delivered the materials. However, in the case now before us, the owner when Theresa Lawson delivered the materials was the builder  Brian Homes.
In the case now before us, the trial court could have reasonably inferred from the evidence before it that the course of dealing between Lawson and Brian Homes established the existence of a contract implied in fact whereby Lawson implicitly promised to deliver materials to Brian Homes for it to use in building houses in exchange for Brian Homes' implicit promise to pay Lawson for the materials.
The lien statute states that it creates a full-price lien in favor of a materialman who has "any contract" with the owner. The term "any contract" would include a contract implied in fact. See IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992) ("The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, *1097 plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."). Therefore, the trial court, on the basis of the evidence before it, could have correctly concluded that Lawson was entitled to a full-price lien. Accordingly, I respectfully dissent.
MURDOCK, J., concurs.
NOTES
[1] Although Chase was one of the named parties below and in the related appeal in Lawson v. Brian Homes, [Ms. 2040619, October 20, 2006] ___ So.2d ___ (Ala.Civ.App.2006) ("Lawson I"), that company is not a party to this appeal, which was brought only by the Saunderses regarding the trial court's judgment against them and in favor of Lawson.
[2] In Lawson I, this court addressed the issue whether equitable subrogation can apply to subordinate a lien properly perfected according to § 35-11-211, Ala.Code 1975 (the materialman's lien-priority statute). We answered that question in the affirmative and determined that any lien that might be proven by Lawson was subordinate to the mortgage held by Chase.
[3] We note that this is an incorrect summary of § 35-11-215; that section allows materialmen contracting with the owner or the owner's agent up to six months after the debt accrues to file a verified statement of a lien; the Code section does not reference loan closings at all. See, e.g., Southern Sash of Huntsville, Inc. v. Jean, 285 Ala. 705, 235 So.2d 842 (1970).
[4] Although the record in this case reveals that Lawson may have had a more significant connection to Brian Homes than simply being an ordinary subcontractor, such a determination is not necessary to the resolution of this appeal.
[5] Our resolution of this appeal renders moot Lawson's argument that § 35-11-211 does not require notice to eventual owners within the six-month time period for filing a statement of lien. Further, the decision in this case does not necessarily reflect a determination of the existence or non-existence of any liens that Lawson may have attempted to perfect on other properties involved in the consolidated cases referenced in Lawson I.
[6] The main opinion in the present case reiterates a notion that was first expressed in the main opinion in Lawson I, namely, "the construction loan secured by the senior mortgage was paid in full with the proceeds of loans made on behalf of the ultimate occupiers of the constructed houses. . . ." Lawson I, ___ So.2d at ___ (emphasis added). Viewed properly, however, the construction loan was paid in full with the proceeds from the sales of the properties in question. As to the borrower and lender of the construction loan, the sources of the moneys received from the sales of the properties were the ultimate purchasers of those properties. For purposes of deciding the question of equitable subrogation that was at issue in Lawson I, it should not have made a difference whether the purchasers procured the moneys needed to complete those sales transactions from their own assets or savings or from moneys borrowed from a third-party lender. I therefore dissented in Lawson I.