THOMAS, Judge.
In spring 2007, Dr. Roger Boyington (“Boyington”) desired to remodel an existing building to house his medical practice (“the remodel project”). A limited-liability company in which he and his wife, Suzanne Boyington, were the only members, River Bend Estates, L.L.C. (“RBE”), owned the building. In May 2007, RBE entered into an agreement with Team Management & Development, LLC (“TMD”), for TMD to be responsible for handling the remodel project. In turn, TMD, as a representative of RBE, employed Andrew & Dawson (“A & D”) as the general contractor for the remodel project.
A & D contracted with Donald Bryan, doing business as R & R Electrical and Plumbing, to perform plumbing and electrical work on the remodel project. Bryan was the second plumber on the remodel project; the first plumber had worked only one or two days before he terminated his contract with A & D. A & D requested that Bryan provide a quote for the plumbing work to be performed, which he did. Later, A & D asked whether Bryan co.uld also give a quote for the electrical portion of the work; Bryan’s quote for the electrical work was $39,500. Bryan and A & D entered into a oral contract for Bryan to perform the electrical and plumbing work on the remodel project.
Ultimately, the remodel project took longer and cost more money than Boying-ton had first expected. He became dissatisfied with A & D and had other contractors with whom he personally contracted *350 perform certain portions of the work on the remodel project. Although Boyington began seeing patients in the office in February 2008 and received a certificate of occupancy for the building on April 25, 2008, the remodel project was not completed until, at the earliest, May 2008. Boy-ington had complaints about the completed work, including complaints about the increased cost, the type of paint used, the type of flooring that had been installed, and his inability to use his CT scanner because of an electrical problem. As a result, TMD did not pay the final pay requests received from A & D or from Bryan.
Bryan sued Boyington, RBE, and Andrew & Dawson, Inc. (“ADI”), in the Cov-ington Circuit Court on May 29, 2008. His multiple-count complaint asserted, among other things, breach-of-contract, fraud, and conversion claims against all the defendants. Bryan’s original complaint also stated a claim under the Prompt Pay Act, codified at Ala.Code 1975, § 8-29-1 et seq.,[1] alleging that the defendants had failed to promptly pay him as required and seeking penalty interest and an attorney fee, as provided for in § 8-29-6. Bryan amended his complaint several times, asserting, among other things, a claim to enforce a materialman’s lien; adding Gerald Salter (“Gerald”), the proprietor of A & D and a shareholder of ADI, Brent Salter (“Brent”), an employee of A & D and a shareholder of ADI, and Tom Mills, an employee of ADI, as parties; and stating claims against those added defendants. Bryan voluntarily dismissed his claims against Gerald, Brent, and Mills on the first day of trial. .
ADI filed an answer to the original complaint. ADI also asserted cross-claims against Boyington and RBE, including a fraud claim, a breach-of-contract claim, and a claim seeking enforcement of a ma-terialman’s lien. Boyington and RBE answered the original complaint and the cross-claims filed by ADI. Boyington and RBE later asserted a counterclaim against Bryan and cross-claims against ADI. Boy-ington and RBE also filed a third-party complaint against TMD and Jack Kirk, the president and CEO of TMD. Boyington and RBE settled then- claims against TMD and Kirk and voluntarily dismissed them from the action on March 8, 2011. Another unpaid subcontractor, Bonitz Flooring Group, Inc. (“Bonitz”), moved to intervene in the action, seeking payment from ADI; ADI consented to a judgment in favor of Bonitz.
In March 2012, Boyington and RBE moved for leave to amend their cross-claims to add as parties to those claims Gerald and Brent and to assert a defamation claim against Gerald and Brent. The trial court never ruled on that motion. In December 2012, after the first day of trial had been completed, Gerald and Brent sought leave of court to file a cross-claim against RBE seeking recovery either as individuals, as Gerald doing business as A & D, or as “Andrew <& Dawson, Proprietorship.” The trial court denied that motion on the second day of the trial. However, as will be discussed further, infra, the testimony at trial revealed that the design-build contract was executed on behalf of RBE and A & D, not ADI, and, despite its earlier interlocutory denial of Gerald and Brent’s motion seeking leave to assert a cross-claim, the trial court, it appears, substituted A & D as the real party in interest after the close of the evidence, pursuant to Rule 17(a), Ala. R. Civ. P., and Rule 15(b), Ala. R. Civ. P. (stating that an amendment to conform the pleadings to *351 the evidence “shall not be refused ... solely because it ... works a complete change in parties”).
The action was tried over three days in November and December 2012 and in June 2013. The trial comí; entered a judgment on September 26, 2013, in favor of Bryan and against Boyington, RBE, and A & D in the amount of $43,205.57 on Bryan’s breach-of-contract claim. The trial court also entered a judgment in favor of A & D and against RBE for the total amount of $63,075, which amount was composed of the $43,205.57 owed to Bryan,[2] $11,201.98 owed to Bonitz, and $8,667.45 for other amounts due and owing to A & D. The trial court denied all other relief requested by the parties.[3]
Boyington and RBE filed a joint post-judgment motion on October 24, 2013. On October 30, 2013, Bryan filed a response to Boyington and RBE’s motion, in which he also requested postjudgment relief. On October 31, 2013, Boyington and RBE moved to strike that portion of Bryan’s October 30, 2013, response insofar as it sought to amend the judgment or requested other postjudgment relief. After a hearing, the trial court denied Boyington and RBE’s joint postjudgment motion, and it denied Bryan’s response, insofar as it had sought postjudgment relief, as having been untimely filed. Boyington and RBE appealed to the Alabama Supreme Court, and Bryan perfected a cross-appeal. Our supreme court transferred the appeals to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
Our standard of review in cases where the trial court considers oral testimony is well settled.
“ “When evidence is taken ore tenus and the trial judge makes no express findings of fact, [an appellate court] will assume that the trial judge made those findings necessary to support the judgment. Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992) (citing Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins & Assocs. Inc., 578 So.2d 1061 (Ala.1991)). We will not disturb the findings of the trial court unless those findings are “clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” Gaston v. Ames, 514 So.2d 877, 878 (Ala.1987) (citing Cougar Mining Co. v. Mineral Land & Mining Consultants, Inc., 392 So.2d 1177 (Ala.1981))....
“‘“However, the ore tenus standard of review has no application to a trial court’s conclusions of law or its application of law to the facts; a trial court’s ruling on a question of law carries no presumption of correctness on appeal.” Ex parte J.E., 1 So.3d [1002,] 1008 [ (Ala.2008) ].... [An appellate court] “ ‘review[s] the trial court’s conclusions of law and its application of law to the facts under the de novo standard of review.’ ” Id. (quoting Washington v. State, 922 So.2d 145, 158 (Ala.Crim.App.2005)).’ ”
Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc., 62 So.3d 1020, 1024-25 *352 (Ala.2010) (quoting Espinoza v. Rudolph, 46 So.3d 403, 412 (Ala.2010)).
As noted, the trial was conducted over three days. The parties presented the testimony of 10 witnesses and introduced over 100 exhibits. The record contains the following facts relevant to the issues presented on appeal.
Bryan testified that he began work on the remodel project in September 2007. He said he first had difficulty getting paid in December 2007 for his November 2007 pay request. Bryan testified that he was not paid enough money to pay his supplier for items that he had purchased for the remodel project; as a result, Bryan explained, his supplier “froze” his account, preventing him from performing other work because he was unable to obtain necessary supplies. Bryan said that he left the remodel project in January 2008 because he was not being paid. He testified that he had had a conversation with Boy-ington that same month about not being paid and that Boyington had assured Bryan that he would be paid and stated that, if A & D did not pay Bryan, Boying-ton would. Bryan recalled the discussion thusly:
“I asked Dr. Boyington if he and I could work out the payments, that he and I could handle me getting paid. And he said sure. That that would not be a problem. That he would guarantee me that I would get paid. That he had a retirement account. That if he had to go into it, he — or some kind of retirement fund. That he could go into it and get the money necessary to pay me.”
According to Bryan’s testimony at trial, he returned to the remodel project and completed the work based on Boyington’s assurances that payment would be made; in his deposition, however, Bryan stated that Gerald and Brent had also given Bryan assurances that he would receive payment. When confronted with his deposition testimony, Bryan admitted that the assurances provided by Boyington, Gerald, and Brent had together prompted his return to the remodel project. However, Bryan said, despite the assurances he received, payment was not forthcoming. Although he continued to submit pay requests to A & D, Bryan said, he was not paid upon his return to the remodel project. Bryan said that he had heard from representatives of A & D that TMD was not paying it, so A & D could not pay Bryan, and that Boyington had told him that TMD had paid A & D and that A & D should have paid Bryan. Bryan admitted that he was seeking the same amount of money from Boyington and RBE that A & D had admitted on the record at the beginning of the trial it owed to Bryan— $43,205.57. Bryan stated that he had continued to send pay requests to A & D and that he had been expecting payment from “anybody that would pay me.”
On May 30, 2008, Bryan filed a verified statement of lien in the Covington County probate office as required by Ala.Code 1975, § 35-11-213, to perfect a material-man’s lien. Bryan testified that he had filed the lien after he had completed his work on the remodel project and after he had failed to receive the balance due for the work he had performed. The amount of the indebtedness upon which the lien is based is the same amount Bryan sought as damages in his breach-of-contract action: $43,205.57.
Gerald testified that he and his son, Brent, are the sole shareholders of ADI and that Gerald is the owner of A & D, which is a sole proprietorship. According to Gerald, ADI does not hold a general contractor’s license. However, Gerald testified, and documentary evidence established, that A & D had a general contractor’s license in 2007 and 2008, when A <& D *353 was the general contractor on the remodel project. Gerald said that A & D was never paid the entire amount of money due for the remodel project. Gerald testified that A & D was owed $82,000.
Brent testified that he had signed the design-build contract and that the contract had mistakenly identified him as the owner of A & D, although Gerald was the true owner. However, Brent explained, the design-build contract was between TMD, as representative of RBE, and A & D, not ADI. When questioned as to why he was denominated as the “owner” of A & D on the design-build contract, Brent stated that it was a typographical mistake and that the contract should have indicated that he was the project manager, not the owner, of A & D. Brent testified that the total amount owed by RBE to A & ,D under the design-build contract was $82,404. Brent also testified that Bryan was due the entire amount he claimed and that A & D had been unable to pay Bryan because it had not been paid.
Brent testified that he had never sat for the general contractor’s licensing exam and that, as far as he knew, Gerald had also never sat for the exam. However, Brent explained, Gerald had purchased A & D and its general contractor’s license. Brent testified that “[w]e followed the instructions that we were given to transfer a license. Whatever was required is what we did.” Brent further clarified that A & D, the sole proprietorship, and not ADI, the corporation, held the general contractor’s license. According to Brent, persons employed by ADI and persons employed by Salter Construction, another entity in which Brent and Gerald had an interest, performed work on the remodel project. Brent testified that the checks used to pay Bryan and other subcontractors were drawn on an account bearing, the name “Andrew & Dawson Contractors”; he also stated that the payments A & D received from TMD were deposited into that same account.
Boyington testified that RBE had paid either $300,000 or $400,000 to A & D to complete the remodel project; documentary evidence indicated that RBE had paid A & D $362,549 of the $444,953 billed under the design-build contract. Boyington admitted that he had told Bryan that if A & D did not pay Bryan, Boyington would pay Bryan, “even if it came out of [his] own savings account.” According to Boyington, the conversation in which that promise was made occurred in November 2007. Boy-ington further admitted that he had received a direct benefit from Bryan’s return to the remodel project, which benefit was, he said, having the job completed so that the building could receive a certificate of occupancy and he could begin operating his medical practice from the building.
On appeal, Boyington and RBE make two main arguments in support of their bid to reverse the trial court’s judgment. First, Boyington and RBE argue that, insofar as the trial court concluded that Bryan had an oral contract with Boyington based on the conversation Boyington had with Bryan regarding payment, the trial court erred in enforcing that -oral contract because, Boyington and RBE contend, it is void under the Statute of Frauds, codified at Ala.Code 1975,' § 8-9-2.[4] Secondly, RBE argues that the judgment in favor of A & D cannot stand because ADI did not have a general contractor’s license, and, as a result, it argues, the design-build con *354 tract is void and unenforceable. See Cooper v. Johnston, 283 Ala. 565, 569, 219 So.2d 392, 396 (1969) (holding that an unlicensed contractor cannot recover under his or her contract because such contract is void as against public policy). Neither argument is convincing.
As noted above, Boyington admitted that he told Bryan that he would pay Bryan if A & D did not pay Bryan for his work on the remodel project. That promise was intended to, and did, induce Bryan to return to work on the remodel project so that the project could be completed. Although Boyington and RBE argue that Boyington’s promise to Bryan is barred from enforcement by the Statute of Frauds because, they contend, it is a promise to pay the debt of another, see § 8-9-2(3), we cannot agree.
The Statute of Frauds states, in pertinent part:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
[[Image here]]
“(3) Every special promise to answer for the debt, default or miscarriage of another.”
§ 8-9-2.
In order to determine whether Boyington’s oral promise to pay Bryan for his work on the remodel project is void under the Statute of Frauds, we must decide whether that promise is collateral or original. Smith v. Rials, 595 So.2d 490, 492 (Ala.Civ.App.1991). As we explained in Rials:
“1 “Collateral” agreements are those in which the object of the promise is to become the guarantor of another’s debt; these are within the statute and must be in writing to be enforceable. “Original” agreements are those in which the effect of the promise is to pay the debt of another, but the object of the promise is to promote some purpose of the promisor.’
“Fendley v. Dozier Hardware Co., 449 So.2d 1236 (Ala.1984) (citations omitted).
“A promise to pay the debt of another is not within the statute if the promise is based upon a new and valuable consideration which is beneficial to the promisor. Phillips Brokerage v. Professional Personnel Consultants, 517 So.2d 1 (Ala.Civ.App.1987).”
Rials, 595 So.2d at 492.
In Rials, we were faced with a dilemma similar to the one presented in this case. A lessor of a rental house had contracted with an air-conditioning contractor to install central heating and air conditioning in the rental house. Rials, 595 So.2d at 491. When the owner of the rental house happened to see the contractor performing some work on the rental house, the owner approached the contractor to inquire what he was doing. Id. -During the discussion that ensued, the owner informed the contractor that he was the owner of the rental house, the contractor explained what he had been contracted to do, the contractor asked if he should discontinue the work, and the owner gave the contractor permission to complete the work. Id. The trial court awarded the contractor a judgment against the owner, and the owner appealed, arguing that any agreement between the owner and the contractor violated the Statute of Frauds. Id. This court affirmed the judgment in favor of the contractor, explaining that the agreement between the contractor and the owner was original in nature because “[t]he benefit derived from *355 [the contractor’s] completion of the project flowed directly to [the owner].” Id. at 492.
Likewise, our supreme court held in a case quite similar to this one that a promise to workmen that their wages would be paid if they returned to complete work that would benefit the promisor was not barred by the Statute of Frauds. Borden v. King Mill & Lumber Co., 214 Ala. 308, 309, 107 So. 455, 456 (1926). In Borden, several plaintiffs sued the King Mill & Lumber Company and R.B. Twitty, alleging that each plaintiff was owed wages for work and labor done manufacturing lumber at a sawmill owned by Twitty. Borden, 214 Ala. at 308, 107 So. at 456. Twitty had employed the plaintiffs to assist in manufacturing timber owned by King Mill & Lumber into lumber. 214 Ala. at 309, 107 So. at 456. Twitty failed to pay the plaintiffs for the work they performed, and the plaintiffs quit working at the sawmill. Id. King, a member of King Mill & Lumber, told each plaintiff “that if they would return to work at the mill for Twitty ... the King Mill and Lumber Company would pay the amount due each by Twitty, and would also pay their wages for future work performed by them in manufacturing this timber into lumber.” Id. The plaintiffs returned to work based on that promise. Id.
Our supreme court rejected the argument that the oral promise made by King was not enforceable, and it reversed the trial court’s judgment in favor of King Mill & Lumber. Id. The court concluded that
“[t]he promise of the King Mill & Lumber Company to pay the debts due each plaintiff by Twitty only was based on a new and valuable consideration. They were to return to work, which they did, and their future work would benefit these defendants, as they would thereby have their timber manufactured into lumber. The promise by them to plaintiffs, and on which plaintiffs acted, was binding on these defendants.”

Id.

We cannot see a material distinction between the situations in Borden and Rials and the present case. Like the plaintiffs in Borden, Bryan had left the remodel project over a dispute about being paid. Like King in Borden, Boyington assured Bryan that he would be paid for his work, even if Boyington had to pay the money out of his personal funds. Like the plaintiffs in Borden, Bryan returned to work, and, like the plaintiffs in Borden and the contractor in Rials, Bryan performed further work to complete the project. Bryan acted on Boyington’s promise and conferred a benefit — the completion of the electrical and plumbing work necessary for a certificate of occupancy of the medical office — on Boyington and RBE. Because we conclude that the agreement between Boyington and Bryan was original in nature, the agreement does not violate § 8-9-2(3). Therefore, we affirm the judgment in favor of Bryan and against Boyington and RBE on Bryan’s breach-of-contract claim.
Boyington and RBE next argue that RBE cannot be held liable under the design-build contract because ADI did not possess a general contractor’s license at the time it performed the remodel project. The analysis of this argument is complicated by the fact that there were at least two entities using the name “Andrew & Dawson” during the period pertinent to this appeal — one a sole proprietorship, A & D, and the other a corporation, ADI. Bryan sued ADI, the corporation, ADI answered and filed cross-claims against Boyington and RBE, and RBE filed a cross-claim against ADI. At no time during the pleading stage did ADI ever request that A & D be substituted as the proper party.
*356 However, as noted earlier, in December 2012, after the first day of trial had been completed, Gerald and Brent, who, at that time, were no longer parties to the action, moved for leave to file a cross-claim against RBE in their individual capacities or in the name of “Gerald Salter d/b/a Andrew & Dawson” or “Andrew & Dawson, Proprietorship.” In that motion, the Salters alleged that the design-build contract was' between RBE and either A & D or Gerald d/b/a A & D. On the record on the second day of the trial, the trial court denied the motion, stating that it considered the motion, especially insofar as it requested to add new claims, as having come too late because the trial had already commenced. Later, during the extensive testimony, it became clear that -the design-build contract was executed on behalf of RBE and A & D, despite the fact that the contract had inaccurately labeled Brent as the owner of A & D. As noted above, the testimony and documentary evidence demonstrated that TMD had paid A & D, that A & D had deposited TMD’s payments in a checking account labeled “Andrew & Dawson Contractors,” and that checks to subcontractors like Bryan were written out of that same account. Thus, the evidence established that the proper party, and the real party in interest on the cross-claims, was A & D.
The trial court’s judgment awards Bryan a judgment against A & D, among others, and awards A & D a judgment against RBE; thus, it appears, as A & D suggests in its brief on appeal, that the trial court determined that the proper party to the action was, in fact, A & D, and that it substituted A & D for ADI, despite its earlier denial of the motion to add A & D as a party.[5] Certainly, insofar as the cross-claims asserted against RBE are concerned, A & D, and not ADI, is the real party in interest.[6] Under Rule 17(a), Ala. R. Civ. P., a party must be given the opportunity to substitute the real party in interest before an action is dismissed on the ground that it is not being prosecuted in the name of the real party in interest. See Rule 17(a) (“No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest.... ”); Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 619 (Ala.1988) (noting that a summary judgment should not have been entered on the ground that a party was not the real party in interest until that party had had an opportunity to substitute the real party in interest). Thus, we agree that the trial court may well have determined, based on the evidence at trial, that the proper party, and the real party in interest as to the cross-claims asserted by ADI, was A & D; furthermore, we agree that the trial court could have amended the various pleadings to conform to the evidence so as to properly designate A & D as the proper party in the litigation.[7] See Rule 15(b), Ala. R. Civ. P.
*357 That being decided, we must conclude that the argument asserted on appeal by RBE — that the design-build contract is void because ADI did not have, a general contractor’s license — is unavailing. The record demonstrates that the design-build contract was between RBE and A & D. Although there was some testimony to the effect that some ADI employees may have worked on the remodel project, the remaining testimony and documentary evidence was sufficient for the trial court to have concluded that the remodel project was undertaken and performed by A & D. In addition, it is clear from the record that, although ADI did not hold a general contractor’s license during the relevant period, A & D did. Thus, the design-build contract is not. void and is enforceable.[8]
Turning now to Bryan’s cross-appeal, we first note that Bryan asserts what appear to be two arguments that would be considered conditional in nature: that he was entitled to the judgment in his favor under a negligence theory or that he was entitled to the judgment in his favor under an unjust-enrichment theory. Regarding the negligence claim, we note that the case upon which Bryan relies indicates that a negligence claim would lie where the duty was created independent of any contractual relationship between the plaintiff and the defendant, see Berkel and Co. Contractors, Inc. v. Providence Hosp., 454 So.2d 496, 502 (Ala.1984), but the trial court necessarily concluded that Bryan and Boying-ton had entered into a contract. Regarding the unjust-enrichment claim, we note that our supreme court “has recognized[,] ... where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter,” Kennedy v. Polar-BEK & Baker Wildwood P’ship, 682 So.2d 443, 447 (Ala.1996); in. light of the entry of a judgment in his favor on his breach-of-contract claim, Bryan cannot also succeed on his''unjust-enrichment claim. Thus, because we are affirming the judgment in favor of Bryan on his breach-of-contract claim, we need not consider the alternative bases upon which the judgment in Bryan’s favor could have been based.
Bryan also argues that the trial court erred by failing to enter a judgment in his favor under the Prompt Pay Act, which act, he contends, entitles him to an award of interest on his payment request and a reasonable attorney fee. See Ala.Code 1975, § 8-29-6. Bryan specifically sought relief under the Prompt Pay Act in his complaint. In addition, in his posttrial brief Bryan argued that he was entitled to recover under the Prompt Pay Act; he requested an award of .$70,223.45, which *358 included the $43,205.57 he requested as payment, plus interest on that amount, and an attorney fee of $23,100.
Section 8-29-2 states: “Performance by a contractor, subcontractor, or sub-subcontractor in accordance with the provisions of his or her contract entitles them to payment from the party with whom they contract.” As Bryan argues, the trial court must have determined that he had a contract with Boyington requiring Boying-ton to pay Bryan for the materials and labor Bryan expended on the remodel project; we are affirming that judgment. Thus, as Bryan contends, by virtue of the conclusion that he had a direct contract with Boyington, Bryan was a “contractor” under the Prompt Pay Act, because he was a “person ... who contracts with an owner to improve real property or perform construction services for an owner.” § 8-29-1(1). Pursuant to § 8-29-3(a),[9] Bryan argues, he was entitled to have been paid by Boyington within 30 days of submitting his pay request for the electrical and plumbing services he performed on the remodel project to Boyington on April 28, 2008; Boy-ington admitted at trial that Bryan had not been not paid.
Section 8-29-4(a) provides that “[n]oth-ing in this chapter shall prevent the owner ... from withholding application and certification for payment for[, among other things, ‘unsatisfactory job progress,’ ‘defective construction not remedied,’ and ‘disputed work’] if there is a bona fide dispute over [those issues].” However, under § 8-29-4(c), “[a]n owner is required to notify a contractor in writing within 15 days of receipt of any disputed request for payment.” Boyington did not specifically notify Bryan of any dispute regarding the April 28, 2008, pay request within 15 days; however, Boyington had communicated displeasure over the overall costs and workmanship of the project to A & D, even before Bryan submitted his pay request to Boyington.
Based on Boyington’s failure to pay Bryan’s pay request by May 28, 2008, Bryan argues, he was entitled to 1% interest per month on the entire unpaid balance of his pay request, which, he says, would have started to accrue on May 28, 2008. See § 8-29-3(d) (“If the owner ... does not make payment in compliance with this chapter, the owner ... shall be obligated to pay his or her contractor ... interest at the rate of one percent per month (12% per annum) on the unpaid balance due.”). Section 8-29-6 further supports Bryan’s argument, because it states, in pertinent part, that, “[i]f the court finds in the civil action that the owner ... has not made payment in compliance with this chapter, the court shall award the interest specified in this chapter in addition to the amount due.” However, in order to award the interest penalty, a trial court must determine that the owner “ha[d] not made payment in compliance with [the Prompt Pay Act],” § 8-29-6, which would require a determination that the payment had not been made, that the payment, or a portion of it, had been withheld without a bona fide dispute, or that the owner had failed to give the appropriate notice that it dis *359 puted the pay request. See Tolar Constr., LLC v. Kean Elec. Co., 944 So.2d 138, 148 (Ala.2006). A determination regarding each of those issues would require the 'resolution of questions of fact. See Midwest Asbestos Abatement Corp. v. Brooks, 90 S.W.3d 480, 485 (Mo.Ct.App.2002) (applying Missouri’s public prompt pay act and stating that, “whether a payment was withheld in good faith under the Prompt Pay Act presents a question of fact, the resolution of which is left to the fact finder”).
Finally, Bryan argues that he was entitled to a reasonable attorney fee for filing his action to collect the unpaid balance from Boyington. Section 8-29-6 provides, in pertinent part, that, “[i]n any such civil action, the party in whose favor a judgement is rendered shall be entitled to recover payment of reasonable attorneys’ fees, court costs and reasonable expenses from the other party.” Our supreme court has determined that a prevailing party is entitled to an attorney fee under § 8-29-6 regardless of whether that party is entitled to the interest penalty under the Prompt Pay Act. See Tolar Constr., 944 So.2d at 150.
The trial court did not mention the Prompt Pay Act in its judgment, but it denied all claims for relief asserted by the parties other than those addressed in the judgment. Thus, the trial court appears to have rejected Bryan’s claims for an award of penalty interest and an attorney fee under the Prompt Pay Act. Bryan failed to timely file a postjudgment motion; thus, insofar as he argues that the trial court erred by failing to award him the interest penalty under the Prompt Pay Act, we are precluded from considering his argument on appeal, because issues pertaining to the imposition of the interest penalty, like whether Boyington failed to pay Bryan “in compliance with” the Prompt Pay Act, whether Boyington gave timely notice to Bryan that he disputed the request for payment, and whether Boyington had a bona fide dispute that would entitle him to withhold payment under the Prompt Pay Act, involve questions of fact. See New Props., L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004) (holding that, in order to raise an argument pertaining to the sufficiency of the evidence to support a judgment in a nonjury action in which the trial court has made no specific findings of fact, a party must file a timely postjudgment motion raising that issue).
However, Bryan’s failure to file a timely postjudgment motion does not impact his right to seek an attorney fee under the Prompt Pay Act, because a “party in whose favor a judgment is rendered shall be entitled to recover payment of reasonable attorneys’ fees,” § 8-29-6, “irrespective of whether a party is entitled to interest under the [Prompt Pay] Act.” Tolar Constr., 944 So.2d at 150. Bryan prevailed, and we are affirming the judgment in his favor. Accordingly, we agree with Bryan that he is entitled to an award of an attorney fee under the Prompt Pay Act, and the trial court’s judgment is reversed insofar as it denied Bryan that award.
Bryan next argues that he was “entitled to a judgment on his [material-man’s] lien” under Ala.Code 1975, § 35-11-210. That statute provides, in pertinent part, as follows:
“Every ... person ... who shall do or perform any work, or labor upon, or furnish any material ... for any building or improvement on land, or for repairing, altering, or beautifying the same, under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, architect, trustee, contractor, or subcontractor, upon complying with the provisions of this division, shall have a lien therefor on such build *360 ing or improvements and on the land on which the same is situated, to the extent in ownership of all the right, title, and interest therein of the owner or proprietor, and to the extent in area of the entire lot or parcel of land in a city or town; or, if not in a city or town, of one aci-e in addition to the land upon which the building or improvement is situated; or, if employees of the contractor or persons furnishing material to him or her, the lien shall extend only to the amount of any unpaid balance due the contractor by the owner or proprietor, and the employees and materialmen shall also have a lien on the unpaid balance. But if the person, firm, or corporation; before furnishing any material, shall notify the owner or his or her agent in writing that certain specified material will be furnished by him or her to the contractor or subcontractor for use in the building or improvements on the land of the owner or proprietor at certain specified prices, unless the owner or proprietor or his or her agent objects thereto, the furnisher of the material shall have a lien for the full price thereof as specified in the notice to the owner or proprietor without regard to whether or not the amount of the claim for the material so furnished exceeds the unpaid balance due the contractor, unless on the notice herein provided for being given, the owner or proprietor or his or her agent shall notify the furnish-er in writing before the material is used, that he or she will not be responsible for the price thereof....”
§ 35-11-210.
Two types of liens may be created under § 35-11-210. Saunders v. Lawson, 982 So.2d 1091, 1093 (Ala.Civ.App.2006). As we explained in Saunders, those liens are: “ ‘(1) a hen for the full price of the materials furnished and (2) a lien for the amount of the unpaid balance due the contractor from the owner.’ ” Saunders, 982 So.2d at 1093 (quoting Abell-Howe Co. v. Industrial Dev. Bd. of Irondale, 392 So.2d 221, 224 (Ala.Civ.App.1980)). We further explained that
“[t]o establish the right to a full-price lien, the supplier must either (1) have an express contract with the property’s owner or the owner’s agent to supply the materials or labor, or (2) have given notice to the owner in writing of the cost of the materials or labor to be supplied before beginning work or delivering materials and the owner must not have responded in writing that the owner will not be liable for payment. See Ala.Code 1975, § 35-11-210; Davis v. Gobble-Fite Lumber Co., 592 So.2d 202, 206 (Ala.1991); see also Keith C. Kantack, A Guide to Mechanics’ Liens in Alabama, 61 Ala. Law. 202 (2000).”

Id.

“As for the unpaid balance lien, which is also included in § 35-11-210, a supplier who was not the original contractor ... must give the owner notice of his intent to claim a lien on the owner’s property before filing a verified statement claiming a lien. § 35-11-218, Code of Ala.1975. Where there is no unpaid balance due or to become due to the contractor, no lien can attach. Baker Sand & Gravel Co. v. Rogers Plumbing & Heating Co., 228 Ala. 612, 154 So. 591 (1934).”
Abell-Howe Co., 392 So.2d at 225 (footnote omitted).
“Materialman’s Hens, being statutory creations, can be perfected and enforced only by complying with the requirements found in Ala.Code 1975, § 35-11-210 et seq. The liens are inchoate and will be lost if the lienors fail to perfect them according to the requirements of the statute. Bailey Mortgage Co. v. *361 Gobble-Fite Lumber Co., 565 So.2d 138 (Ala.1990).
“Section 35-11-224 ... reads as follows:
‘“Any defendant, by appropriate plea, may put in issue the fact of indebtedness or the existence of the lien, or both, and may interpose any other defense applicable to the action; and if the court by its finding, or the jury by their verdict, as the case may be, ascertain that the plaintiff has a lien as claimed, judgment shall be entered for the amount secured thereby, interest and costs, against the party liable for the same, and establishing the lien, and condemning the property to sale for the satisfaction thereof; but if the finding or verdict is for the plaintiff only on the issue of indebtedness, a judgment shall be entered in his favor for the amount thereof as in other cases.’
“(Emphasis added.) This section requires that liability for the debt be established and that a money judgment be entered against the debtor as a prerequisite to perfecting and enforcing the lien. See May & Thomas Hardware Co. v. McConnell, 102 Ala. 577, 14 So. 768 (1893); see, also, 53 Am.Jur.2d, Mechanic’s Liens § 342 (1970).”
Ex parte Grubbs, 571 So.2d 1119, 1120 (Ala.1990).
In their respective briefs, Bryan, on one hand, and Boyington and RBE, on the other, argue solely about which type of lien Bryan perfected under § 35-11-210. Bryan argues that he perfected a full-price lien, but Boyington and RBE argue that Bryan could have perfected only an unpaid-balance lien. We conclude that Bryan perfected a full-price lien.
Because the trial court must have determined that Bryan and Boyington had a contract in order to have awarded Bryan damages on his breach-of-contract claim, and because we are affirming the judgment entered in Bryan’s favor on that claim, Bryan was an “original contractor” under § 35-11-210, Abell-Howe Co., 392 So.2d at 225, because he was a “person ... who shall do or perform any work, or labor upon, or furnish any material- ... for any building or improvement on land, or for repairing, altering, or beautifying the same, under or by virtue of any contract with the owner.”[10] See Wahouma Drug Co. v. Kirkpatrick Sand & Cement Co., 187 Ala. 318, 320, 65 So. 825, 825 (1914) (determining that a materialman had become an “original contractor” under the predecessor statute to § 35-11-210 when the owner of the property had entered into an agreement stating, in part, that “ ‘[w]e own this property and will see that you get your money for what material is delivered’”). Thus, because he was not, in this particular instance, “a supplier who was not the original contractor,” Abell-Howe Co., 392 So.2d at 225, Bryan perfected a full-price lien by timely filing his statement of lien under Ala.Code 1975, § 35-11-213, and by timely bringing suit to enforce the lien under Ala.Code 1975, § 35-11-221. See Bailey Mortg. Co. v. Gobble-Fite Lumber Co., 565 So.2d 138, 141-43 (Ala.1990) (setting out the steps to perfect a material-man’s lien). Bryan was not required to give Boyington notice of the lien under Ala.Code 1975, § 35-11-218, which exempts “original contractors” from that requirement, although he had provided notice to Boyington that he intended to file the lien. See Wahouma Drug Co., 187 Ala. at 321, 65 So. at 826; see also J. Lister Hubbard, A Current Overview of Alabama’s Mechanic’s and Materialman’s *362 Lien Law, 49 Ala. Law. 203, 204 (1988) (“An ‘original contractor,’ who is absolved ... from the notice requirement (see § 35-11-218), is one with a direct contract with the owner and may even be a materi-alman.”). The trial court entered a judgment in favor of Bryan on his breach-of-contract claim, satisfying the requirement that “liability for the debt be established and that a money judgment be.entered against the debtor as a prerequisite to perfecting and enforcing the lien.” Ex parte Grubbs, 571 So.2d at 1120. Therefore, Bryan was entitled to a judgment on his materialman’s lien as a full-price lien, and we reverse the trial court’s judgment insofar as the judgment failed to enter judgment on that lien.[11]
Finally, Bryan argues that he was entitled to prejudgment interest[12] under Ala.Code 1975, § 8-8-8, which provides:
“All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed.”
Our supreme court has explained that
“[t]his statute has been interpreted to mean that ‘in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest from that time until recovery.’ C. Gamble, Alabama Law of Damages, § 8-3 (2d. ed.1988); citing Tennessee Coal, Iron & R. Co. v. Jourdan, 221 Ala. 106, 128 So. 132 (1930); Jefferson County v. City of Birmingham, 235 Ala. 199, 178 So. 226 (1938); Roe v. Baggett Transportation Co., 326 F.2d 298 (5th Cir.1963); and Belcher v. Birmingham Trust Nat’l Bank, 488 F.2d 474 (5th Cir.1973).”
Miller & Co. v. McCown, 531 So.2d 888, 889 (Ala.1988). The damages due to Bryan for Boyington’s breach of contract were “certain or [were] capable of being made certain” at the time of the breach, Wood v. Central Bank of the South, 435 So.2d 1287, 1291 (Ala.Civ.App.1982); that is, those damages were capable of being ascertained with “ease and certainty” or by “a simple mathematical computation.” Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105, 112 (Ala.1983); see also Jernigan v. Happoldt, 978 So.2d 764, 767 (Ala.Civ.App.2007) (awarding prejudgment interest on a judgment in favor of a contractor on his breach-of-contract claim for work performed and materials supplied to homeowners with whom he had a contract). Thus, the trial court erred in not awarding Bryan prejudgment interest under § 8-B-8, and we reverse the trial court’s judgment insofar as it failed to do so.
In conclusion, the trial court’s judgment in favor of Bryan and A & D against Boyington and RBE on Bryan’s and A & D’s breach-of-contract claims are affirmed. *363 The trial court’s judgment is reversed insofar as it failed to enter a judgment in favor of Bryan on his materialman’s lien, to award Bryan a reasonable attorney fee under the Prompt Pay Act, and to award Bryan prejudgment interest under § 8-8-8. The cause is therefore remanded to the trial court for it to enter a judgment in favor of Bryan on his materialman’s lien, to award Bryan a reasonable attorney fee under the Prompt Pay Act, and to compute and award Bryan the appropriate amount of prejudgment interest. As to the other issues raised in Bryan’s cross-appeal, the trial court’s judgment is affirmed.
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. This act is also referred to as "the Deborah K. Miller Act.” See Rogers & Willard, Inc. v. Harwood, 999 So.2d 912, 919 (Ala.Civ.App.2007).

. We note that the judgment appears to require RBE to pay the $43,205.57 owed to Bryan twice by awarding that amount to Bryan and also to A & D. However, that potential issue is not raised on appeal.

. The judgment also contained another provision regarding an award in favor of Bonitz, which is not a parly to this appeal. Thus, that particular provision of the judgment is not relevant to the issues presented in this appeal and will not be discussed.'

. RBE, the owner of the building, did not argue in the trial court and does not argue on appeal that Boyington made the oral contract with Bryan in his individual capacity. Therefore, we will treat RBE and Boyington as the same entity for the purpose- of evaluating the oral contract.

."An order granting or denying a motion to amend a complaint is interlocutory.” Kraz, L.L.C. v. Holliman, 142 So.3d 1161, 1165 n. 2 (Ala.Civ.App.2013); Deakle v. Childs, 939 So.2d 936, 939 (Ala.Civ.App.2006); see also Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed.App'x 861, 863 (11th Cir.2007) (not selected for publication in the Federal Reporter) (stating that an order denying a motion for leave to amend a complaint was an interlocutory order).

. " '[T]he real party in interest principle is a means to identify the [entity] who possesses the right sought to be enforced.' " Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala.1988) (quoting 6 C. Wright & A. Miller, Federal Practice & Procedure § 1542 (1971)).

. Because we have determined that the trial court properly concluded that the proper party to the action is A & D, we have modified *357 the style of the appeal to reflect that A & D is an appellee.

. To the extent that RBE argues in its brief that A & D should not have been able to hold its general contractor’s license because it lacked a "qualifying party” to hold a license under Ala. Admin. Code (Licensing Bd. for Gen. Contractors), Rule 230-X-1-.36, we note that that argument is also unavailing. A & D undisputedly held a general contractor’s license issued by the State Licensing Board for General Contractors, and, thus, that license was "evidence that the ... firm ... named therein is entitled to all the rights and privileges of a licensed general contractor to perform work [as a licensed general contractor] while the license remains unrevoked or unexpired.” Ala.Code 1975, § 34-8-5. IfA&D’s license had been inappropriately granted or transferred on the basis of some fraud or mistake, the remedy would lie in a proceeding before the licensing board, not in an appeal to this court from a judgment in a breach-of-contract action. See Ala.Code 1975, § 34-8-4(b) (indicating that any party may complain of ány fraud or deceit by a general contractor in obtaining a license and that the board will conduct a hearing on those charges unless those charges are dismissed because they are determined to be unfounded or trivial).

. That subsection reads:
"When a contractor has performed pursuant to his or her contract and submits an application or pay request for payment or an invoice for materials, to the owner or owner’s representative, the owner shall timely pay the contractor by mailing via first class mail or delivering the amount of the pay request or invoice in accordance with the payment terms agreed to by the owner and the contractor, the agreed upon payment terms must be specified in all contract documents, but if payment terms are not agreed to, then within 30 days after receipt of the pay request or invoice.”
§ 8-29-3(a).

. See note 4, supra.

. According to our supreme court, a "mate-rialman who furnishes labor and material is entitled to pursue in one action his lien and a general judgment against the contracting owner ..., though he may have only one satisfaction.” Lavergne v. Evans Bros. Constr. Co., 166 Ala. 289, 292, 52 So. 318, 319 (1910).

. In his argument concerning prejudgment interest in his brief, Bryan mentions that the trial court entered a judgment in favor of A & D. To the extent Bryan might be arguing that A & D is also entitled to prejudgment interest, we note that Bryan has no right to assert that argument on A & D's behalf. See Miller v. Thompson, 844 So.2d 1229, 1232 (Ala.Civ.App.2002) (determining that an appellant could not assert an argument that the appel-lee should have paid the attorney fee of a party that did not appeal the judgment). Thus, we will not consider whether A & D is also entitled to prejudgment interest.